393 A.2d 1133

**COMMONWEALTH of Pennsylvania**

v.

**Anthony HOGAN, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 20, 1977.

Decided Oct. 5, 1978.

334

Michael M. Baylson, Samuel Kagle, Philadelphia, for appellant.

F. Emmett Fitzpatrick, Dist. Atty., Steven H. Goldblatt, Deputy Dist. Atty. for Law, Michael R. Stiles, Asst. Dist. Atty., Chief, Appeals Div., Marrianne E. Cox, Asst. Dist. Atty., Philadelphia, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX and MANDERINO, JJ.

## OPINION

NIX, Justice.

The pivotal question presented in this appeal is whether the Double Jeopardy Clauses of the United States and Pennsylvania Constitutions would be violated by a retrial of appellant under an indictment where two previously com-

pleted trials had resulted in the award of new trials at appellant's request.

Appellant, Anthony Hogan, was arrested for the slaying of a police officer on November 20, 1971. Appellant was thereafter convicted of first degree murder in two jury trials and on each occasion was awarded a new trial by the court en banc. Prior to the commencement of the third trial a motion to dismiss the indictment for an alleged double jeopardy violation was filed on appellant's behalf. After hearing testimony and argument on the motion, the court entered an order denying the motion to dismiss. It is from this order that the instant appeal arises. For the reasons that follow, we now affirm.

At the outset we must address the question of the appealability of the denial of this motion at this time. While the general rule in criminal law is that a defendant may appeal only from a judgment of sentence, *Commonwealth v. Myers*, 457 Pa. 317, 322 A.2d 131 (1974); *Commonwealth v. Sites*, 430 Pa. 115, 242 A.2d 220 (1968); *Commonwealth v. Wright*, 383 Pa. 532, 119 A.2d 492 (1956), a majority of this Court has held that we do have jurisdiction to hear an appeal from the denial of a defendant's pre-trial motion to dismiss an indictment on double jeopardy grounds, *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977).[1] *See also Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977).

1. This writer expressed a contrary view. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90, 114 (1977) (Dissenting Opinion, Nix, J. joined by O'Brien, J.). We note that under the rules of the Pennsylvania appellate procedure, an appeal may be taken in a criminal case from the award of a new trial where it is contended that the proper disposition would be an absolute discharge. Pa.R.A.P. 311(b). Thus, if the basis for the double jeopardy claim arises in an earlier trial, the defendant has a right to assert it in the post-verdict motions in that trial and to seek immediate appellate review even where he is awarded a new trial. This new procedure raises the interesting question (which we decline to answer today) of whether, where the claim is available in an earlier trial it must be pursued by appeal, even where a new trial is awarded, upon penalty that the defendant may be barred from subsequently raising the issue prior to the commencement of the re-trial.

■   Having concluded that the matter is ripe for decision, we now turn to the merits of appellant's contention. It is argued that the awards of new trials following the first two trials were occasioned by prosecutorial misconduct,[2] and therefore the allowance of a third trial would constitute an infringement upon the protection against double jeopardy.

The fifth amendment's guarantee against double jeopardy consists "of three separate constitutional protections. It protects against a second prosecution for the same offense after acquittal. It protects against a second prosecution for the same offense after conviction. And it protects against multiple punishments for the same offense." *North Carolina v. Pearce*, 395 U.S. 711, 717, 89 S.Ct. 2072, 2076, 23 L.Ed.2d 656 (1969). *See also United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896) (prosecution following acquittal); *In re Nielsen*, 131 U.S. 176, 9 S.Ct. 672, 33 L.Ed. 118 (1889) (prosecution following conviction); *United States v. Benz*, 282 U.S. 304, 51 S.Ct. 113, 75 L.Ed. 354 (1931) (multiple punishments).

The United States Supreme Court has ofttimes stated the concept underlying the double jeopardy clause:

"Underlying this constitutional safeguard is the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuous state of anxiety and insecurity, as well

2.   The Commonwealth disputes appellant's premise that both convictions were caused by prosecutorial misconduct. To the contrary, the Commonwealth charges that the second conviction was reversed due to a violation of our juvenile waiver rule. *Commonwealth v. Smith*, 472 Pa. 492, 372 A.2d 797 (1977); *Commonwealth v. Hailey*, 470 Pa. 488, 368 A.2d 1261 (1977); *Commonwealth v. Webster*, 466 Pa. 314, 353 A.2d 372 (1976); *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975); *Commonwealth v. Starkes*, 461 Pa. 178, 335 A.2d 698 (1975); *Commonwealth v. Roane*, 459 Pa. 389, 329 A.2d 286 (1974). The Commonwealth also disputes that there is any basis for a finding of *intentional* prosecutorial misconduct in the first trial. It is contended that the assistant district attorney's conduct, while error, was "understandable in light of the unusual circumstances." In view of our disposition, we need not resolve these disputes.

as enhancing the possibility that even though innocent he may be found guilty.' *Green v. United States*, 355 U.S. 184, 187–188, 78 S.Ct. 221, 223, 2 L.Ed.2d 199, 204". Quoted in *United States v. Scott*, 437 U.S. 82, 86–87, 98 S.Ct. 2187, 2191–2192, 57 L.Ed.2d 65, 71–72 (1978); *United States v. Dinitz*, 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976). The successive prosecution of the double jeopardy protection arises in two distinct settings. The first setting involves the termination of a criminal proceeding at a stage short of judgment, so that no final determination of guilt or innocence has been made. This form of termination is most frequently encountered where the proceeding has ended in a mistrial.

In such circumstances, the key double jeopardy consideration is whether "the defendant has been deprived of his 'valued right to have his trial completed by a particular tribunal.'" *See United States v. Jorn*, 400 U.S. 470, 484, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971) (plurality opinion by Harlan, J.), quoting *Wade v. Hunter*, 336 U.S. 648, 689, 69 S.Ct. 834, 93 L.Ed. 974 (1949). This right is firmly within the protection of the double jeopardy prohibition. *Crist v. Bretz*, 437 U.S. 28, 38, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24, 33 (1978). The evil that the double jeopardy protection focuses upon in this context is that the government should be prevented from deliberately causing the abortion of the proceeding to secure more favorable opportunity to convict. *Downum v. United States*, 372 U.S. 734, 736, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963). Thus, overreaching or bad faith conduct by the prosecutor or trial judge are relevant in determining the scope of the double jeopardy protection when mistrials have been declared. *United States v. Scott*, 437 U.S. 82, 93, 98 S.Ct. 2187, 2195, 57 L.Ed.2d 65, 76 (1978); *United States v. Dinitz*, 424 U.S. 600, 611, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *United States v. Jorn, supra*, 400 U.S. at 484, 485, 91 S.Ct. 547.

The second setting which requires a consideration of the double jeopardy protection, as it applies to successive prosecutions is where the defendant has gone to verdict with the

tribunal of his choice and, following his conviction by that tribunal, he has successfully appealed and won a new trial. Prosecutorial misconduct is not relevant here because:

> ". . . the crucial difference between reprosecution after appeal by the defendant and reprosecution after a . . . mistrial declaration is that in the first situation the defendant has not been deprived of his option to go to the first jury and, perhaps, end the dispute then and there with an acquittal."

*United States v. Jorn, supra,* at 484, 91 S.Ct. at 557.

The United States Supreme Court has remained steadfast in its strict adherence to the principle announced in *United States v. Ball,* 163 U.S. 662, 671–72, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), that the double jeopardy clause does not bar retrial following a successful appeal. As that Court recently stated in *Burks v. United States,* 437 U.S. 1, 14, 98 S.Ct. 2141, 2149, 57 L.Ed.2d 1, 11 (1978):

> "We have no doubt that Ball was correct in allowing a new trial to rectify *trial error* :
>
>> 'The principle that [the Double Jeopardy Clause] does not preclude the Government's retrying a defendant whose conviction is set aside because of an *error in the proceedings* leading to conviction is a well-established part of our constitutional jurisprudence.' *United States v. Tateo,* 377 U.S. 463, 465, 84 S.Ct. 1587, 1589, 12 L.Ed.2d 448 . . . (1965)." (Emphasis supplied by the Court)

Thus, that Court has made clear, that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, . . . poses no bar to further prosecution on the same charge." *United States v. Scott, supra,* 437 U.S. at 90, 98 S.Ct. at 2193, 57 L.Ed.2d at 74, citing *Burks v. United States, supra.*

Although waiver of jeopardy, continuing jeopardy, and other explanations have been proffered in support of the *Ball* rule allowing retrial to correct trial error, the United States Supreme Court decided in *Burks v. United States,*

*supra*, that the most reasonable rationale was that advanced in *United States v. Tateo, supra*, 377 U.S. at 466, 84 S.Ct. 1587. There the Court stated that "[i]t would be a high price indeed for society to pay were every accused granted immunity from punishment because of any defect sufficient to constitute reversible error in the proceedings leading to conviction." *Burks v. United States, supra*, 437 U.S. at 15, 98 S.Ct. at 2149, 57 L.Ed.2d at 12.

Appellant would have us engraft an exception onto the *Ball* principle so as to prohibit retrial where the trial error creating the need for the reversal of the conviction was the result of prosecutorial misconduct. First, we note that we have failed to find any United States Supreme Court decision that suggests such a result. Presently prosecutorial bad faith is relevant *only* when the double jeopardy clause is implicated in a mistrial, see discussion at pages 338–339, *supra*, and not even in *dicta* has that Court hinted that extending prosecutorial misconduct considerations to retrials following successful appeals would be proper or appropriate.

Second, at the end of its last Term, the United States Supreme Court undertook a major reappraisal of its double jeopardy decisions. In *United States v. Scott, supra*, the Court based its reappraisal upon "our vastly increased exposure to the various facets of the Double Jeopardy Clause," and overruled a case decided "only three Terms ago"— *United States v. Jenkins*, 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975); *United States v. Scott, supra*, 437 U.S. at 86, 98 S.Ct. at 2191, 57 L.Ed.2d at 71. On the same day, in *Burks v. United States, supra*, the Supreme Court unanimously overruled three other double jeopardy decisions: *Forman v. United States*, 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); *Yates v. United States*, 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); and *Bryan v. United States*, 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).[3] In

---

3. In *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) the United States Supreme Court held that the double jeopardy clause precluded a second trial once the reviewing court has found the evidence insufficient to sustain the jury's verdict of guilty. The Court further held that it makes no difference that a defendant

light of the Court's retrenchment from the nadir of its expansive reading of the double jeopardy clause in *United States v. Jenkins, supra,*[4] it would be unwise for this Court now to extend that clause to areas in which the United States Supreme Court has yet to venture.

Lastly, the double jeopardy clause should be strictly construed by reference to its historical purposes, as outlined above. Although "[t]hese historical purposes are necessarily general in nature, and their application has come to abound in often subtle distinctions . . . the primary purpose of the Double Jeopardy Clause was to protect the integrity of a final judgment." *United States v. Scott, supra,* 437 U.S. at 82, 87, 98 S.Ct. at 2192, 57 L.Ed.2d at 72, 74. Thus, "a provision like that of double jeopardy . . . is rooted in history and is not an evolving concept like that of due process." *Gore v. United States,* 357 U.S. 386, 392, 78 S.Ct. 1280, 1284, 2 L.Ed.2d 1405 (1958).

Appellant seeks to buttress his argument by relying upon Mr. Justice POMEROY's Opinion in Support of Affirmance in *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978). *Potter* was affirmed per curiam by an equally divided court. Mr. Justice POMEROY wrote that the same double jeopardy

sought a new trial as one of his remedies, or even as the sole remedy, and that the defendant does not waive his right to a judgment of acquittal by moving for a new trial. To the extent that they suggest such a waiver, the following cases were overruled: *Forman v. United States,* 361 U.S. 416, 80 S.Ct. 481, 4 L.Ed.2d 412 (1960); *Yates v. United States,* 354 U.S. 298, 77 S.Ct. 1064, 1 L.Ed.2d 1356 (1957); *Bryan v. United States,* 338 U.S. 552, 70 S.Ct. 317, 94 L.Ed. 335 (1950).

4. In *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975), the United States Supreme Court held that the government could not appeal the dismissal of an indictment after jeopardy attached and prior to a determination of guilt or innocence, because further proceedings would conflict with the protection contained in the double jeopardy clause. *Jenkins* was overruled in *United States v. Scott,* 437 U.S. 82, 98 S.Ct. 2187, 57 L.Ed.2d 65 (1978) where the Court held that when a defendant himself seeks to have his trial terminated without any submission to either judge or jury as to his guilt or innocence, as by dismissal of the indictment, neither an appeal by the government from defendant's successful effort to abort his trial, nor a second prosecution after reversal by the appellate court, are barred by the double jeopardy clause.

considerations that apply to mistrials caused by prosecutorial misconduct should also apply to the double jeopardy analysis where the defendant's appeal has won for him a new trial due to prosecutorial misconduct. He based his view on his belief that "the applicability of double jeopardy analysis is not dependent on nice procedural distinctions." *Id.*, 478 Pa. at 259, 386 A.2d at 921.

However, as we have previously mentioned, mistrials present a distinctly different consideration because the right of the accused to have judgment passed upon by the empanelled tribunal has been frustrated. Such is not the case where the verdict has been rendered and is set aside at the behest of the defendant upon a finding of trial error. The very core of the protection offered by the double jeopardy clause is the assurance of an adjudication by a tribunal having jurisdiction to hear and determine the cause and the finality of that judgment. *United States v. Oppenheimer,* 242 U.S. 85, 37 S.Ct. 68, 61 L.Ed. 161 (1916). Thus, mistrials touch upon the very heart of the double jeopardy protection since, in those cases, the original tribunal is prevented from passing judgment.

After the tribunal has reached a verdict an altogether different situation is presented when the defendant appeals his conviction and seeks a new trial. In those circumstances it is clear that "[t]he successful appeal of a judgment of conviction, on any ground other than the insufficiency of the evidence to support the verdict, . . . poses no bar to further prosecution on the same charge." *United States v. Scott, supra,* 437 U.S. at 90, 98 S.Ct. at 2193, 57 L.Ed.2d at 74. In sum, the distinction between a mistrial and a retrial following a successful appeal is more than mere procedure. Instead, it is rooted in the historical purposes of the double jeopardy clause.

Mr. Justice POMEROY's view has been undermined by recent decisions of the United States Supreme Court retreating from prior expansive interpretations of the double jeopardy clause. *See, e. g., United States v. Scott, supra,* overruling *United States v. Jenkins, supra. Jenkins* was relied upon by Mr. Justice POMEROY in his *Potter* opinion.

■ Our inquiry does not end with the conclusion that the federal double jeopardy clause does not bar reprosecution because appellant also raises the applicability of the double jeopardy clause within the Pennsylvania Constitution. The fact that the double jeopardy protection provided under the Fifth Amendment has been made applicable to the states under the Fourteenth Amendment, *North Carolina v. Pearce, supra; Robinson v. Neil,* 409 U.S. 505, 93 S.Ct. 876, 35 L.Ed.2d 29 (1973); *Benton v. Maryland,* 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969), does not necessarily deter a state from providing in its constitution an enhanced protection for its citizens, *Holden v. Hardy,* 169 U.S. 366, 18 S.Ct. 383, 42 L.Ed. 780 (1897); *Commonwealth v. Campana,* 455 Pa. 622, 314 A.2d 854 (1974).

The Pennsylvania double jeopardy clause differs "only stylistically from that contained in the Fifth Amendment." *Commonwealth v. Campana,* 452 Pa. 233, 243, 304 A.2d 432, 436 (1973). Nevertheless, the proscription against double jeopardy found in art. 1, § 10 of our Constitution was interpreted by the courts of this jurisdiction as applying only where a person was twice placed in jeopardy for a crime punishable by death.[5] *Commonwealth ex rel. Papy v. Maroney,* 417 Pa. 368, 207 A.2d 814 (1965); *Commonwealth v. Baker,* 413 Pa. 105, 196 A.2d 382 (1964). The protection against successive prosecutions in non-capital cases was provided in this jurisdiction by the statutory pleas in bar of *autrefois acquit* and *autrefois convict,* Act of Mar. 31, 1860, P.L. 427 § 30; 19 P.S. 463.[6] In view of this historical background there is no basis for suggesting that the framers

5. This view was consistent with the early English common law. Pennsylvania was unique in continuing to limit the double jeopardy clause to capital offenses because by the time of the drafting of the state and federal constitutions in this country, the concept of double jeopardy in English law had been expanded to felony and non-felony offenses. *Commonwealth v. Campana,* 452 Pa. 233, 260, 304 A.2d 432, 449 (1973) (a Concurring Opinion by Nix, J.).

6. This concept originated in the early common law of England, 4 Blackstone's Commentaries 335, and was not considered as part of the double jeopardy protection. *Commonwealth ex rel. Papy v. Maroney,* 417 Pa. 368, 207 A.2d 814 (1965).

of our Constitution intended to provide a greater protection than that afforded under the Fifth Amendment. We therefore hold that art. 1, § 10 does not bar reprosecution in the instant case.

The successive prosecution aspect of double jeopardy was never intended to provide a trial free of error. This concept sought to guarantee that once the accused was placed in jeopardy the proceeding should terminate in a final judgment insulating him from further prosecution for the same offense. *See United States v. Scott, supra*, 437 U.S. at 89, 98 S.Ct. at 2193, 57 L.Ed.2d at 74.

Trial fairness is instead measured by the evolving standard of due process. An allegation of intentional prosecutorial misconduct presents a situation analogous to those in *North Carolina v. Pearce*, 395 U.S. 711, 89 S.Ct. 2072, 23 L.Ed.2d 656 (1969); and *United States v. Marion*, 404 U.S. 307, 92 S.Ct. 455, 30 L.Ed.2d 468 (1971). In *Pearce*, the Court was unable to stretch either the double jeopardy clause or the equal protection clause of the Fourteenth Amendment to prohibit a more severe sentence following a new trial won on appeal. But the Court did hold that the due process clause of the Fourteenth Amendment prohibited such vindictive and retaliatory sentencing. *North Carolina v. Pearce, supra*, 395 U.S. at 725, 89 S.Ct. 2072. Similarly, in *United States v. Marion, supra*, the Court was unable to interpret the speedy trial clause of the Sixth Amendment to include pre-indictment delays. Instead, the Court found protection in the due process clause of the Fifth Amendment against pre-accusation delays engineered for the purpose of gaining a tactical advantage and that actually prejudice the defendant. *United States v. Marion, supra*, 404 U.S. at 324, 92 S.Ct. 455.

It is conceivable that there may be an instance where a series of trials and retrials is so infected with reversible prosecutorial misconduct so as to require, in all fairness, that the government cease its attempts to try the accused. In such an instance, the flexible and evolving concept of due process—rather than the historically rigid rule of double

jeopardy—would be the standard against which would be measured the propriety of allowing the government yet another chance to try the accused. By appellant's failure to properly raise this issue on appeal, we are foreclosed from deciding whether this case would fall within the perimeter of the type of case discussed above.[7]

In conclusion, it must be emphasized that we are not attempting to condone or minimize the evils of prosecutorial misconduct. However, the concept of double jeopardy has been, in the main, confined to its traditional meaning and does not afford appellant the relief he seeks.

Order denying the motion to dismiss the indictment is affirmed.

PACKEL, J., did not participate in the consideration or decision of this case.

ROBERTS, J., filed a concurring opinion in which O'BRIEN and POMEROY, JJ., join.

EAGEN, C. J., and O'BRIEN and MANDERINO, JJ., concurred in the result.

ROBERTS, Justice.

A jury convicted appellant of murder of the first degree on December 11, 1973. Appellant obtained a new trial when the post-verdict court determined that the prosecutor had engaged in deliberate misconduct by violating one court order to inform the court and the defense of the presence of a witness and another order prohibiting introduction of the results of a polygraph examination administered to appellant after arrest. On March 12, 1975, a jury again convicted appellant of murder of the first degree. The post-verdict court granted appellant a third trial because the Commonwealth introduced at trial a statement appellant gave in violation of *Commonwealth v. McCutchen*, 463 Pa. 90, 343 A.2d 669 (1975), cert. denied, 424 U.S. 934, 96 S.Ct. 1147, 47 L.Ed.2d 341 (1976) (restricting use of inculpatory statements of juveniles).

7. · See also footnote 2, *supra*.

Before the third trial, appellant filed a motion for discharge on the ground that, under the Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, applicable to the states through the Fourteenth Amendment, the Commonwealth's misconduct at the first two trials precluded further prosecution. The trial court denied the motion and appellant appealed to this Court. See *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977) (denial of pre-trial motion seeking discharge on Double Jeopardy grounds appealable prior to trial); *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977) (same). The Opinion of Mr. Justice Nix concludes that the Double Jeopardy clauses of the United States and Pennsylvania Constitutions do not prohibit retrial of an appellant who has sought, and received, new trials because of trial error. Five members of this Court have rejected the position of the Opinion of Mr. Justice Nix. Nonetheless, I believe that appellant, on this record, is not entitled to discharge. I therefore concur in the result.

I

The Opinion of Mr. Justice Nix states that an appellant who obtains reversal of his conviction on appeal is never, on principles of Double Jeopardy, entitled to discharge for errors occurring at trial. The Opinion of Mr. Justice Nix relies upon *United States v. Ball*, 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896), where the Supreme Court concluded that the Double Jeopardy Clause did not forbid further prosecution of a defendant who obtained reversal of a conviction tainted by trial error. The Opinion of Mr. Justice Nix concludes that *Ball* precludes appellant from asserting that any sort of misconduct by the prosecutor or the court bars a third trial.

In *Commonwealth v. Potter*, 478 Pa. 251, 386 A.2d 918 (1978), five of the six participating Justices decided this issue to the contrary. In his Opinion in Support of Affirmance, Mr. Justice Pomeroy examined the policies underlying Double Jeopardy and concluded that "a distinction between

granting a new trial at the urging of a defendant and ordering a mistrial at his request is without significance for double jeopardy purposes." 478 Pa. at 259, 386 A.2d at 921 (Opinion of Pomeroy, J., joined by Eagen, C. J., and O'Brien, J.). In opinions in support of reversal, Mr. Justice Manderino and I reached the same conclusion as did Mr. Justice Pomeroy. Thus, a majority of this Court has rejected the position the Opinion of Mr. Justice Nix advocates today.

The conclusion of the five Justices in *Potter* is well supported by both precedent and reason. The United States Supreme Court has established that *Ball* does not prevent an appellant from obtaining discharge on double jeopardy grounds where an appellate court finds the prosecution has failed to present sufficient evidence to support a finding of guilt. *Burks v. United States*, 437 U.S. 1, 98 S.Ct. 2141, 57 L.Ed.2d 1 (1978) (federal prosecution); *Greene v. Massey*, 437 U.S. 19, 98 S.Ct. 2151, 57 L.Ed.2d 15 (1978) (state prosecution). In *Burks*, Mr. Chief Justice Burger concluded for a unanimous Court:

"If the District Court had so held in the first instance, as the reviewing court said it should have done, a judgment of acquittal would have been entered and, of course, petitioner could not be retried for the same offense. See *Fong Foo v. United States*, 369 U.S. 141, 82 S.Ct. 671, 7 L.Ed.2d 629 (1962); *Kepner v. United States*, 195 U.S. 100, 24 S.Ct. 797, 49 L.Ed. 114 (1904). Consequently, as Mr. Justice Douglas correctly perceived in *Sapir* [*v. U. S.*, 348 U.S. 373, 75 S.Ct. 422, 99 L.Ed. 426], it should make no difference that the *reviewing* court, rather than the trial court, determined the evidence to be insufficient, see 348 U.S. at 374, 75 S.Ct. 422. The appellate decision unmistakably meant that the District Court had erred in failing to grant a judgment of acquittal."

437 U.S. at 10, 98 S.Ct. at 2147, 57 L.Ed.2d at 2147 (footnote omitted).

The source of the conclusion that an accused may, in certain situations, raise double jeopardy as a bar to retrial after obtaining a reversal on appeal is the established princi-

ple that the Double Jeopardy Clause protects more than his "valued right to have his trial completed by a particular tribunal." Rather, "[u]nderlying this constitutional safeguard is the belief that 'the State with all its resources and power should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuing state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty.'" *United States v. Dinitz,* 424 U.S. 600, 606, 96 S.Ct. 1075, 1079, 47 L.Ed.2d 267 (1976), quoting *Green v. United States,* 355 U.S. 184, 187–88, 78 S.Ct. 221, 223, 2 L.Ed.2d 199 (1957); accord, *Crist v. Bretz,* 437 U.S. 28, 98 S.Ct. 2156, 2162, 57 L.Ed.2d 24 (1978) (concurring opinion of Blackmun, J.).

The Supreme Court has held that certain misconduct of prosecutor or court precludes further prosecution. The Court reaffirmed in *Dinitz* :

"[t]he Double Jeopardy Clause does protect a defendant against governmental actions intended to provoke mistrial requests and thereby to subject defendants to the substantial burdens imposed by multiple prosecutions. It bars retrials where 'bad-faith conduct by judge or prosecutor,' *United States v. Jorn,* [400 U.S. 470, 485, 91 S.Ct. 547, 557, 27 L.Ed.2d 543 (1971)], threatens the '(h)arassment of an accused by successive prosecutions or declaration of a mistrial so as to afford the prosecution a more favorable opportunity to convict' the defendant. *Downum v. United States,* [372 U.S. 734, 736, 83 S.Ct. 1033, 1034, 10 L.Ed.2d 100 (1963)]."

424 U.S. at 611, 96 S.Ct. at 1081. It follows from *Dinitz* and *Burks* that, if following conviction, the defendant obtains a ruling that prejudicial misconduct of the kind condemned in *Dinitz* occurred at trial, he may not be retried:

"To hold otherwise would create a purely arbitrary distinction between those in petitioner's position [reversal on appeal] and others who would enjoy the benefit of a correct decision by the [trial] Court. See *Sumpter v. DeGroote,* 552 F.2d 1206, 1211–1212 (CA7 1977)."

*United States v. Burks,* supra, 437 U.S. at 11, 98 S.Ct. at 2147.

Mr. Justice Pomeroy, in his Opinion in Support of Affirmance in *Commonwealth v. Potter,* supra, 478 Pa. at 259, 386 A.2d at 921–922, recognized this view as the proper interpretation of *Ball* when applied to claims of prosecutorial misconduct which should bar retrial:

"The question . . . arises whether the fact that a new trial was the result of a decision by a reviewing court rather than the declaration of a mistrial by the trial judge requires that the exceptions to the *Ball* principle cannot be considered. We think not; a distinction between granting a new trial at the urging of a defendant and ordering a mistrial at his request is without significance for double jeopardy purposes. Recent cases in the Supreme Court of the United States have emphasized that in the field of federal criminal practice the applicability of double jeopardy analysis is not dependent on nice procedural distinctions. Thus in *Lee v. United States,* 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977), wherein the district court had characterized its action as a 'dismissal of the information,' it was held that a claim of double jeopardy 'does not turn on whether the District Court labels its action a "dismissal" or a "declaration of mistrial," ' and that 'the order entered by the District Court was functionally indistinguishable from a declaration of mistrial.' Id., 432 U.S. at 30, 97 S.Ct. at 2146, 53 L.Ed.2d at 87. See also *United States v. Martin Linen Supply Co.,* 430 U.S. 564, 97 S.Ct. 1349, 51 L.Ed. 642 (1977); *United States v. Jenkins,* 420 U.S. 358, 95 S.Ct. 1006, 43 L.Ed.2d 250 (1975). Although we are not here presented with the problems of characterization of trial rulings that existed in the cited cases, we think that a functional analysis of the type employed in those cases is equally appropriate to the case at bar. Were the permissibility of reprosecution to be governed by a more relaxed standard where a verdict is set aside post-trial than where a mistrial is granted on motion during trial, trial judges might be led 'to reject the most

meritorious mistrial motion . . . and to require, instead, that the trial proceed to its conclusion despite a legitimate claim of seriously prejudicial error.' *United States v. Dinitz*, 424 U.S. 600, 610, 96 S.Ct. 1075, 1081, 47 L.Ed.2d 267, 275 (1976)."

## II

In *Commonwealth v. Potter*, supra, Mr. Justice Pomeroy stated in his Opinion in Support of Affirmance that Double Jeopardy requires discharge of an appellant whose trial was tainted by intentional prosecutorial misconduct designed to induce declaration of a mistrial in order to afford a more favorable opportunity to convict. In my Opinion in Support of Reversal, I argued that grossly negligent prosecutorial misconduct was also bad faith misconduct justifying discharge. It is unnecessary in this case to choose between the two proposed standards.

Appellant argues that the Commonwealth engaged in such misconduct at the first trial when it violated two court orders. This assertion, however, is not preserved for appellate review because appellant did not raise this issue, as required, in an application for pre-trial relief before the second trial. Pa.R.Crim.P. 304(e) (grounds for relief waived if not raised in pre-trial application) (amended and renumbered Pa.R.Crim.P. 306, effective January 1, 1978); cf. *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974) (trial errors not reviewed on appeal if not raised at trial). Appellant also argues that the Commonwealth engaged in such misconduct at his second trial. He asserts that the Commonwealth (1) knew, or should have known, that recent decisions of this Court had rendered inadmissible the statement introduced at trial; (2) violated a court order by withholding from appellant its knowledge of the existence of a witness until late in the trial; and (3) introduced another statement previously ruled inadmissible. I am satisfied that none of the Commonwealth's actions at the second trial constituted misconduct under either of the standards

350

proposed in *Potter.* I therefore would affirm the order of the trial court dismissing appellant's motion for discharge.

O'BRIEN and POMEROY, JJ., join in this concurring opinion.