394 A.2d 479

COMMONWEALTH of Pennsylvania

v.

**David ASH, Appellant.**

Supreme Court of Pennsylvania.

Argued Oct. 19, 1978.

Decided Nov. 18, 1978.

592

John P. Moses, Wilkes-Barre, for appellant.

Robert J. Gillespie, Jr., First Asst. Dist. Atty., J. P. Giovannini, Asst. Dist. Atty., Wilkes-Barre, for appellee.

Before EAGEN, C. J., and O'BRIEN, ROBERTS, POMEROY, NIX, MANDERINO and LARSEN, JJ.

## OPINION

LARSEN, Justice.

On September 30, 1969, the body of Patricia Emlaw was found in a wooded area in Luzerne County. She had died of knife slashes of the neck. Appellant was indicted for the murder of Miss Emlaw and on March 30, 1970, he entered a general plea of guilty to the charge of murder before Judge Olszewski of the Court of Common Pleas of Luzerne County. After hearing the Commonwealth's case, Judge Olszewski determined that the murder may be of the first degree and pursuant to Rule 1115(b) of the Pennsylvania Rules of Criminal Procedure, elected to secure two additional judges who, after a second hearing, determined appellant's degree of guilt.[1] The three-judge panel found appellant guilty of murder in the first degree[2] and sentenced him to life

---

1. The procedure embodied within this rule was amended and became Rule 352 which was rescinded on April 28, 1978. *See* Pa.R.Crim.P. 351–355 (Supplementary Pamphlet 1978).

2. Appellant was convicted under the old Crimes Code which defined first degree murder as all murder perpetrated by poison or lying in wait; or by any other kind of willful deliberate and premeditated killing, or any murder committed in the perpetration or attempt to perpetrate certain specified felonies. Act of June 24, 1939, P.L. 872, § 701, *as amended.* The statute has since been amended and included in the new Crimes Code. 18 Pa.C.S. § 2502 (Supp.1978).

imprisonment. Appellant's post-trial motions were eventually denied[3] and this appeal followed.

The appellant presents three issues for review: 1) he contends that the lower court erred in failing to suppress his confession because the confession was not given voluntarily and intelligently; 2) he contends that Rule 1115(b) (convening the three-judge panel) is unconstitutional because it allegedly places a defendant in double jeopardy of successive prosecutions; and 3) he contends that the judge improperly invoked Rule 1115(b) due to the fact that the evidence presented at the first hearing was insufficient to indicate that the murder may have been of the first degree. We find no merit in any of these contentions.

In determining whether the lower court's failure to suppress the confession is supported by the facts, our review is limited to "the evidence of the prosecution's witnesses and so much evidence of the defense . . . as . . . remains uncontradicted". *Commonwealth v. Johnson*, 467 Pa. 146, 354 A.2d 886 (1976).[4]

Given this standard, the facts are as follows: on October 4, 1969, at 3:00 p. m., appellant entered the Wyoming State Police Barracks, by his own choice and for his own protection, after being informed that the brother and father of the

**3.** Following sentencing, a direct appeal was made to this Court by appellant without filing post-trial motions. On May 13, 1975, this Court remanded the case for a hearing to determine if this failure to file post-trial motions was knowing and intelligent. *Commonwealth v. Ash*, 461 Pa. 670, 337 A.2d 821 (1975). The lower court concluded it was, but on appeal to this Court from that finding we reversed and remanded the case to the lower court to permit appellant to file post-trial motions. *Commonwealth v. Ash*, 466 Pa. 471, 353 A.2d 450 (1976).

**4.** "In pleading guilty generally to a murder indictment, a defendant does not thereby waive his right to object to the admission of improper evidence which will bear on the degree of guilt and the punishment to be imposed. (citations omitted) Since a general plea to murder is sufficient, in itself, to sustain only a conviction of murder in the second degree and the adjudication of guilt in this case was of a higher degree, the question of the admissibility of the evidence at issue must be resolved." *Commonwealth v. Marsh*, 440 Pa. 590, 271 A.2d 481 (1970).

victim had been drinking and were threatening to kill appellant. Appellant watched television, smoked cigarettes, drank coffee and was even taken out to dinner by Trooper Donald Taylor. Appellant was always free to leave and was never questioned until 9:43 p. m. During this period, the police conducted an investigation (independent of appellant) of appellant's whereabouts the night of the murder and as a result thereof, appellant became a prime suspect by 9:00 p. m. At 9:43 p. m., upon entering the interrogation room at the barracks, appellant was informed by Trooper Taylor that he was a prime suspect in the Patricia Emlaw murder. Appellant was given his constitutional rights and waived them. He also signed a voluntary waiver form giving the police permission to search his car. During the next hour and a half, which included rest periods, appellant was questioned and consistently denied his involvement in the murder. At 11:50 p. m., appellant was taken to the police garage and shown his car which contained blood stains on the front seat and inside the trunk. Appellant was placed under arrest and again read his rights. He waived these rights and stated he would continue with the questioning. He was returned to the interrogation room and once again read his rights. He was also informed that his parents were present in the barracks. Appellant requested to see his mother and they met inside the room for approximately five minutes. She advised appellant to "tell the truth" and upon her departure, at approximately 1:00 a. m., appellant confessed to murdering Patricia Emlaw.

Our review of the totality of circumstances surrounding the confession, *Commonwealth v. Kichline*, 468 Pa. 265 at 279, 361 A.2d 282 at 289–290 (1976), convinces us that appellant's confession was voluntary and intelligent; hence, properly held admissible by the lower court.

Appellant's second contention is that Pa.R.Crim.P. 1115(b) is unconstitutional because it allegedly places a defendant in double jeopardy of successive prosecutions. Rule 1115 provides:

"(a) When a Defendant enters a plea of guilty to a charge of murder, the Judge before whom the plea is entered

shall hold a hearing to determine whether the case may constitute murder in the first degree. If, after the Commonwealth's presentation of its evidence, the Judge is of the opinion that the case does not rise higher than murder in the second degree, he shall proceed to hear all the evidence, determine the crime and impose sentence.

(b) If, after the presentation of the Commonwealth's evidence, the Judge is of the opinion that the case may constitute murder in the first degree, he may secure the assignment of two other Judges of like jurisdiction and power to sit with him to hear the evidence and decide all issues of law and fact. In cases where a panel of three sits, the decision of the Court as to the crime shall be a majority of the Judges, but if they determine that the crime is less than murder in the first degree, the Judge before whom the plea was entered shall alone determine and impose sentence.

(c) If the crime is determined to be murder in the first degree, the sentence shall be life imprisonment unless the Judges unanimously agree upon a sentence of death."

Judge Olszewski, after the initial hearing contemplated by Rule 1115(b), found that the homicide *may* have been murder of the first degree and convened a three-judge panel to determine the degree of guilt. Appellant argues he was placed in double jeopardy by being subjected to the second hearing of evidence to determine the degree of guilt, which degree of guilt should have been determined at the conclusion of the first hearing.

Appellant's argument ignores a crucial factor. There simply was no successive prosecution to which *double* jeopardy could attach. Jeopardy attached during the first hearing and *continued* until judgment and sentence were given by the three-judge panel. Judge Olszewski made no determination at the first hearing other than to decide that the case *may* constitute murder of the first degree. He did not render judgment, verdict or sentence, nor could the guilty plea in and of itself render such. This bifurcated proceeding was but a single prosecution. We hold, therefore, that the application of Rule 1115(b) did not place appellant in double jeopardy.

Appellant's final contention is that the judge's invocation of Rule 1115(b) was improper due to the fact that the evidence presented at the first hearing was insufficient to indicate that the murder may have been of the first degree. He argues that there was no evidence of the manifest intention to use a dangerous weapon upon a vital part of the body of another and, hence, the requisite intent to kill was not established.

Before invoking Rule 1115(b) and securing a three-judge panel to determine the degree of guilt, a judge need only be of the opinion, that, after hearing the Commonwealth's case, the homicide *may* constitute murder of the first degree. The lower court properly summarized the evidence introduced at the first hearing as follows:

> "The individual who discovered the victim's body testified that he saw 'a cut across her neck-throat.' (N.T. 29) The County Coroner testified that 'the cause of death was due to several deep cutting wounds of the neck, with resulting loss of blood, which brought about the (victim's) death' (N.T. 32); and that a linoleum knife introduced into evidence could have produced the wounds found on the body. . . . The police photographer testified that the victim was cut around the neck and had multiple lacerations on her face. (N.T. 41) An examination of photographs of the victim's body indicates that she was brutally and savagely cut and stabbed numerous times in the area of the neck and face. The defendant himself admitted both hitting and cutting the victim (N.T. 135, 136), taking her body to an access road (N.T. 134–135), placing the body in the woods (N.T. 135), and later washing blood from his car (N.T. 135)."

Since specific intent to kill, which distinguishes murder of the first degree from murder of the second degree, may be inferred from the attendant circumstances and/or the intentional use of a deadly weapon on a vital part of the body of another, *Commonwealth v. Craig*, 471 Pa. 310, 370 A.2d 317 (1977), the evidence presented established

an intent to kill and, hence, justified the convening of the three-judge panel pursuant to Rule 1115(b).[5]

Judgment affirmed.

EAGEN, C. J., and O'BRIEN, ROBERTS and POMEROY, JJ., concur in the result.

MANDERINO, J., filed a dissenting opinion.

MANDERINO, Justice, dissenting.

I dissent. The issue which appellant raises concerning Pa.R. of Crim.P. 1115(b) involves more serious considerations than is apparent from the majority's opinion. When a degree of guilt hearing begins, the prosecution presents witnesses who are then subject to cross-examination by the defense. After the prosecution has presented its case (or so much of its case permitting the trial judge to make a decision that murder of the first degree may be involved) the trial judge calls in two other judges if he concludes that the verdict may be murder of the first degree. After the two additional judges are brought in, the prosecution again presents its evidence and again its witnesses are subject to cross-examination by defense counsel—*having the benefit of an opportunity* before new fact finders, of clearing up or sharpening the testimony of prosecution witnesses which may permit them to appear in a more favorable light to the fact finders. In effect the prosecution under the Rule gets the benefit of a dress rehearsal which may enable the performance that counts to be more persuasive to the fact finders.

The majority erroneously implies that a judge must render a verdict before an individual is placed in double jeopardy. However, this Court has said that the double jeopardy clause is designed to prevent an individual from having to stand trial a second time and not merely to prevent successive conviction and punishment. *Commonwealth v. Bolden,*

5. Since it is our obligation, in an appeal from a conviction of murder in the first degree, to review both the law and the evidence "to determine whether the ingredients necessary to constitute murder in the first degree shall have been proved to exist", we have reviewed the record of the degree of guilt hearing and find the evidence is more than sufficient to support the conviction. Act of February 15, 1870, P.L. 15, § 2, 19 P.S., § 1187.

472 Pa. 602, 619, 373 A.2d 90, 98 (1977) (plurality opinion). Additionally, once jeopardy attaches, an individual has a "valued right to have his trial completed by a particular tribunal." Citing *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949) in *Commonwealth v. Bolden*, 472 Pa. 602, 625, 373 A.2d 90, 101 (1977) (plurality opinion).

The aborting of the "first trial" and the beginning of the "second trial" is similar in effect to a mistrial which has occurred without the presence of any manifest necessity. Manifest necessity does not exist simply because our present rule provides for the existing procedure. There is no manifest necessity for our procedure. The Rule is *not the only* alternative to trying an accused in a murder case which might involve murder of the first degree.