423 A.2d 1273

COMMONWEALTH of Pennsylvania

v.

Lance DiVALERIO, Appellant.

Superior Court of Pennsylvania.

Argued Sept. 9, 1980.

Filed Dec. 29, 1980.

Petition for Allowance of Appeal Denied May 11, 1981.

316

Diane V. Elliott, Assistant Public Defender, Doylestown, for appellant.

Stephen B. Harris, Assistant District Attorney, Doylestown, for Commonwealth, appellee.

Before SPAETH, HESTER and CAVANAUGH, JJ.

SPAETH, Judge:

This is an appeal from a judgment of sentence for simple assault,[1] aggravated assault,[2] and recklessly endangering another person.[3]

1. 18 Pa.C.S.A. § 2701.

2. 18 Pa.C.S.A. § 2702.

3. 18 Pa.C.S.A. § 2705.

The Commonwealth's evidence may be summarized as follows. On the evening of February 21, 1979, appellant telephoned his mother and asked her to drive him home from a bar in Bristol. His mother refused, which led to an argument between her and appellant. Approximately one hour later, appellant entered his mother's apartment, grabbed her by the throat, and pushed her onto a chair. He then punched her in the nose and ripped her sweater, and when she fled the house, he chased and caught up with her, to continue the assault. The mother sustained a concussion, broken ribs, a broken finger, and bruises, requiring hospitalization.

On March 16, 1979, appellant was arrested and charged. On June 29, he filed a notice of an insanity defense and an application for a competency determination and a bifurcated trial pursuant to Pa.R.Crim.P. 305 C(1)(b) and Section 404(a), (c) of The Mental Health Procedures Act, Act of July 9, 1976, P.L. 817, No. 143, § 404(a), (c); 50 P.S. § 7404(a), (c). On July 13, the lower court granted appellant's application for a bifurcated trial, and, sitting without a jury, heard psychiatric testimony on the issue of appellant's criminal responsibility. At the conclusion of this hearing, the court stated that it "would not at this point find that the defendant is not criminally responsible." (N.T. 57) The court then ordered defense counsel to proceed to trial. After a recess, during which defense counsel was to determine whether to request a jury trial, the lower court stated that it had been "ill-advised to have granted" appellant's application for a bifurcated trial; the court explained that it had concluded that Section 404 required a jury determination of the issue of appellant's criminal responsibility. The court thereupon rescinded its earlier order granting the application, and directed defense counsel to proceed. Counsel then made a motion to dismiss the prosecution on the ground of double jeopardy. The motion was denied and counsel was again directed to proceed. Counsel then requested a stay pending taking an appeal from the order denying the motion to dismiss. This request was also denied. Counsel filed an

appeal to this court, and on July 16, a petition to stay. After a hearing before one member of this court, the petition was denied without prejudice to counsel later arguing the double jeopardy issue.

On July 16, 1979, appellant was convicted of aggravated assault, simple assault, and recklessly endangering another person. On November 30, the lower court denied appellant's post-trial motions, and on December 27, appellant was sentenced to a prison term of 9 months and 11 days to 23 months, and was granted immediate parole and transferred to the Veteran's Hospital in Coatesville. On January 23, 1980, appellant filed an appeal from the judgment of sentence. Meanwhile, on October 9, 1979, this court had deferred decision on appellant's prior appeal from the lower court order denying his motion to dismiss the prosecution on the ground of double jeopardy until the judgment of sentence. In what follows, we shall dispose of both appeals.

On appeal, appellant argues: 1) that the lower court's order directing him to proceed to trial subjected him to double jeopardy; 2) that the lower court erred in refusing to allow certain cross-examination; and 3) that the Commonwealth failed to meet its burden to prove his sanity.

–1–

Section 404(c) of The Mental Health Procedures Act, pursuant to which appellant's application for a bifurcated trial was filed, provides:

(c) Bifurcation of Issues or Trial.—Upon trial, the court, in the interest of justice, may direct that the issue of criminal responsibility be heard and determined separately from the other issues in the case and, in a trial by jury, that the issue of criminal responsibility be submitted to a separate jury. Upon a request for bifurcation, the court shall consider the substantiality of the defense of lack of responsibility and its effect upon other defenses, and the probability of a fair trial. 50 P.S. § 7404(c).

As noted above, the lower court initially granted the application for a bifurcated trial, but after hearing testimony without a jury on the issue of appellant's criminal responsi-

bility, concluded that under Section 404(c) it was required to sit with a jury and therefore rescinded its order granting the application.

■ We are unable to agree with the lower court's conclusion that Section 404(c) required that the portion of the bifurcated trial concerning criminal responsibility be conducted before a jury. We find no such requirement. Instead, the section provides, as we read it, that if an application for a bifurcated trial is granted, the defendant has these choices: On the issue of criminal responsibility, he may demand a jury, or he may waive a jury; and on the other issues, he may demand a jury, or he may waive a jury. If, on the issue of criminal responsibility, the defendant demands a jury, then that jury may not also determine the other issues. If, on those other issues, the defendant demands a jury, there must be a separate jury.

■ Nevertheless, we agree with the lower court's decision to set aside the bifurcated proceeding on criminal responsibility in the present case. There was no indication that defense counsel had intended to waive appellant's right to a jury. Without a waiver, the court, if it chose to bifurcate, was obliged to conduct the hearing on criminal responsibility before a jury. Having unintentionally denied appellant that right, the court correctly decided that the hearing it had conducted was a nullity and that it should therefore rescind its earlier order granting the application for a bifurcated trial.

Appellant argues, however, that in declaring the hearing on criminal responsibility a nullity and then directing him to proceed to trial, the lower court subjected him to double jeopardy, in violation of the Fifth Amendment to the United States Constitution and Article 1, Section 10, of the Pennsylvania Constitution.[4] His argument is made on two alternate

4. The double jeopardy clause of the Pennsylvania Constitution has been held to govern capital offenses only. *See e. g., Commonwealth v. Henderson,* 482 Pa. 359, 393 A.2d 1146 (1978); *Commonwealth v. Simpson,* 310 Pa. 380, 165 A. 498 (1933). We shall therefore only consider whether there was a violation of the double jeopardy clause

grounds: that the lower court in effect declared a mistrial, without a showing of "manifest necessity"; or that the lower court's statement, when it directed him to proceed to trial, was "tantamount to an acquittal."

■ In *Commonwealth v. Meekins*, 266 Pa.Super. 157, 162–63, 403 A.2d 591, 593–94 (1979), we said:

The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or successive prosecutions for the same offense. *Abney v. U. S.*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *U. S. v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978). At the core of this Constitutional safeguard is the belief that "the State with all its resources and powers should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuous state of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *U. S. v. Scott*, 437 U.S. 82, [88], 98 S.Ct. 2187, 2192, 57 L.Ed.2d 65 (1978); *Dinitz, supra*, 424 U.S. at 606, 96 S.Ct. 1075; *Hogan, supra*, 482 Pa. 336, 393 A.2d at 1134.

It is apparent from this statement that appellant was not subjected to double jeopardy. He was never confronted with "multiple punishments or successive prosecutions for the same offense." He was confronted with punishment, and he was punished, only once, by a judgment of sentence following his conviction by the jury. The hearing on his criminal responsibility, which the lower court nullified, was not a separate prosecution or "trial". It was limited to the single issue of criminal responsibility and could not result in appellant being punished.

of the Fifth Amendment to the United States Constitution, which is binding on the states through the Due Process Clause of the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969).

Recently, our Supreme Court rejected a defendant's double jeopardy claim where, in circumstances similar to. those here, a prosecution was bifurcated. In *Commonwealth v. Ash*, 482 Pa. 590, 394 A.2d 479 (1978), our Supreme Court upheld the constitutionality of Pa.R.Crim.P. 1115(b), now rescinded, which provided that a judge hearing a plea of guilty to murder generally was to determine, first, whether the homicide might have been first-degree murder, and next, if it might have been, was to convene a three-judge panel to determine the degree of guilt. In rejecting the argument that this procedure subjected a defendant to double jeopardy, the Court said:

Appellant's argument ignores a crucial factor. There simply was no successive prosecution to which *double* jeopardy could attach. Jeopardy attached during the first hearing and *continued* until judgment and sentence were given by the three-judge panel. Judge Olszewski made no determination at the first hearing other than to decide that the case *may* constitute murder of the first degree. He did not render judgment, verdict or sentence, nor could the guilty plea in and of itself render such. This bifurcated proceeding was but a single prosecution. We hold, therefore, that the application of Rule 1115(b) did not place appellant in double jeopardy. 482 Pa. at 595, 394 A.2d at 481.

■ Neither do we believe that the lower court made a statement "tantamount to an acquittal." At the close of the testimony of appellant's witnesses on the issue of criminal responsibility the court said:

There is some speculation but if I had nothing else before me, if this were all that I were to hear on the subject in a criminal trial, I would be inclined and certainly would believe that I would have a reasonable doubt as to your defendant's guilt because I would not be of the opinion that he probably was not able to tell the difference between right and wrong. . . .

I do believe though that I am required to hear other evidence, or a jury must, if it is to be a jury trial, because

I am of the opinion also, I think, as Mr. Goldman probably is, that there are other circumstances and I think Doctor Barrett agreed that it might be helpful.

(7/13/79, N.T. 56–57)

We do not understand these remarks to represent a finding of reasonable doubt as to appellant's sanity. They seem to us instead to indicate that in the absence of more evidence, the court was undecided regarding appellant's sanity, and also, to indicate the court's misunderstanding of the bifurcated hearing process.[5]

–2–

The lower court sustained the Commonwealth's objections to the following questions put to appellant's mother on cross-examination:

Q  [by Miss Elliott, defense counsel]:  Now, did Lance live with you the entire time he was growing up?

A:  No.

Q:  Where else did Lance Live?

A:  He lived with his grandmother and with his father.

Q:  How come he didn't stay with you?

A:  Because I remarried.  I divorced his father and I remarried.

Q:  And why did Lance have to move when you remarried?

MR. GOLDMAN [assistant district attorney]:  Objection.

THE COURT: Objection sustained.  You need not answer that.

BY MISS ELLIOTT:

Q:  Did there come a time when he returned to your home?

A:  Yes.

---

5.  Appellant has argued that the lower court erred in directing him to proceed to trial and in denying his request for a stay, but since both of these arguments assume a violation of the prohibition against double jeopardy, we need not consider them.

Q: Was that while you were still married, the second time? Did he return home while you were married the second time?

MR. GOLDMAN: Objection.

WITNESS: No.

THE COURT: Objection is sustained. You need not respond to that. There may be a relevance that I just don't see at the moment.

MISS ELLIOTT: I think their relationship may go to the issue of sanity.

THE COURT: Of whether or not there was an assault?

MISS ELLIOTT: To the issue of his state of mind at that time.

THE COURT: The objection is sustained.

MISS ELLIOTT: Do you recall an incident at Lance's grandmother's house while he was living there where someone had told him that there was gold in the chimney?

MR. GOLDMAN: Objection, Your Honor.

THE COURT: Sustained.

MISS ELLIOTT: Your Honor, I believe this goes to his overall mental state.

THE COURT: We are concerned with what occurred on February 21, 1979 in the apartment of Joyce Belmont; matters just testified to. Matters of defense may be properly. . . .

Q: Did you ever really take any responsibility for Lance as he was growing up?

A: Of course.

MR. GOLDMAN: Objection, Your Honor.

THE COURT: Sustained. The answer has already been given of course. Go ahead.

Q: Didn't you feel any concern about his having to walk back in that weather?

MR. GOLDMAN: Objection.

THE COURT: Objection sustained. You need not answer.

MR. ELLIOTT: Why did you feel so much opposition to the request?

MR. GOLDMAN: Objection.

THE COURT: Objection sustained. You need not answer. The fact is that the witness stated she did not go down for whatever reason she feels she gave. Her motivation for not going down is of no concern to the jury.

(N.T. 85–92)

It is settled that "questions concern[ing the] admission or exclusion of evidence are within the sound discretion of the court and will be reversed on appeal only where a clear abuse of discretion exists." *Commonwealth v. Kramer*, 247 Pa.Super. 1, 7–8, 371 A.2d 1008, 1011 (1977). *See also Commonwealth v. Humphreys*, 267 Pa.Super. 318, 406 A.2d 1060 (1979). In *Commonwealth v. England*, 474 Pa. 1, 375 A.2d 1292 (1977), our Supreme Court held that a trial court did not abuse its discretion in excluding testimony as to statements that were allegedly made by the defendant as long as 18 months after the crime and did not reflect behavior different in character from that already presented to the jury. The trial court did permit testimony as to the defendant's statements made before the date of the commission of the crime and also statements "shortly after" or "reasonably close in time" to the crime. 474 Pa. at 15, 375 A.2d at 1299. The Supreme Court noted that "there is a period, whether the act is verbal or nonverbal, when the conduct may become so removed in time from the critical period that its probative value is de minimis, if not absent, at least to the mind of a layperson." 474 Pa. at 14, 375 A.2d at 1299.

■ Here the lower court acted within its discretion in refusing to allow the questions put to appellant's mother on cross-examination. The questions concerned events that do not appear to have been either close to the time of the

incident or otherwise relevant to appellant's state of mind at the time of the incident. In addition, there was other evidence in the form of psychiatric testimony as to the relationship between appellant and his mother.

–3–

■ It is settled that Pennsylvania law applies the M'Naghten test of insanity. Under this test, a defendant is legally insane if "at the time of the act either he did not know the nature and quality of the act or he did not know it was wrong." *Commonwealth v. Bruno,* 466 Pa. 245, 251, 352 A.2d 40, 43 (1976); *Commonwealth v. Hamilton,* 459 Pa. 304, 308, 329 A.2d 212, 214 (1974), *cert. denied,* 420 U.S. 981, 95 S.Ct. 1411, 43 L.Ed.2d 663 (1975). Once a defendant offers some evidence of his insanity under the M'Naghten test, the Commonwealth bears the burden of establishing the defendant's sanity beyond a reasonable doubt. *Commonwealth v. Ernst,* 476 Pa. 102, 381 A.2d 1245 (1977); *Commonwealth v. Whitfield,* 475 Pa. 297, 380 A.2d 362 (1977). In *Commonwealth v. Norman,* 259 Pa.Super. 301, 393 A.2d 837 (1978), it is said:

> Our courts impose this obligation upon the Commonwealth because ". . . [i]n any criminal prosecution, the Commonwealth has an unshifting burden to prove beyond a reasonable doubt all elements of the crime." *Commonwealth v. Rose,* 457 Pa. 380, 389, 321 A.2d 880, 884 (1974). *See also Commonwealth v. Moyer,* 466 Pa. 464, 468, 353 A.2d 447, 449 (1976). In attempting to meet this burden, the Commonwealth may rely on either expert or lay testimony. *Commonwealth v. Vogel,* 468 Pa. 438, 364 A.2d 274 (1976); *Commonwealth v. Bruno, supra; Commonwealth v. Demmitt, supra* [456 Pa. 475, 321 A.2d 627 (1974)]; *Commonwealth v. Donotrio,* 247 Pa.Super. 345, 372 A.2d 859 (1977); *Commonwealth v. Ross,* 239 Pa.Super. 94, 361 A.2d 685 (1976); *Commonwealth v. Washington,* 235 Pa. Super. 339, 340 A.2d 896 (1975). As the Supreme Court stated in *Commonwealth v. Demmitt,* "[t]his evidence may come from testimony of [lay] witnesses concerning the

defendant's actions, conversations, and statements at the time of the [act in question] from which the jury could find that he knew what he was doing when he [performed the act in question] and knew it was wrong. 259 Pa.Super. at 313, 393 A.2d at 843. (Opinion in support of reversal by HOFFMAN, J., joined by JACOBS, P. J. and SPAETH, J.)

Appellant's mother—the victim of appellant's attack—testified that appellant "always did have a very strong temper," and that she had had arguments with him in the past. (N.T. 73) She also testified regarding her telephone conversation with appellant before the attack, stating: "He was mad because I wouldn't do what he asked me to. He demanded it and got real mad about it and he just says—he was in the middle of business and he says that I'm messing up everything for him." (N.T. 72–73) Finally, she testified that when appellant's girlfriend came to her aid during the attack, appellant told his girlfriend, "Leave me alone. I'm after her; I don't want to hurt you. . . ." (N.T. 78) Police Officer John Schwabb testified that he and another officer arrived at the scene of the attack and spoke to appellant for a few minutes and advised him to leave his mother's apartment, which he did, apparently without resistance. (7/13/79 N.T. 97)

The defense presented testimony by a psychologist, Thomas Barrett, and a psychiatrist, Ralph Zaroff. Dr. Barrett, who first examined appellant approximately one month after the incident, testified that appellant was "probably unable to determine the difference between right and wrong because of his serious mental disturbance and because of the associated delusional thinking." (N.T. 122) Dr. Zaroff testified that on the basis of reports he had received and his initial examination of appellant approximately one month after the incident, he believed that "Mr. DiValerio was not aware of what he was doing at the time that he committed his crime." (N.T. 163)

Without question, the testimony of Dr. Barrett and Dr. Zaroff represented some evidence of appellant's insanity

under the M'Naghten test. The Commonwealth was therefore required to prove appellant's sanity beyond a reasonable doubt. In our opinion the jury was entitled to find that the Commonwealth had met this burden by presenting the testimony of appellant's mother and Officer Schwabb who described appellant's conduct at the time of the incident. This testimony must be viewed in the light most favorable to the Commonwealth. The doctors' testimony referred to appellant's mental condition approximately one month after the incident, and the jury apparently chose not to accept it. The weight to be accorded psychiatric testimony, as is true of any other evidence, is for the trier of fact to decide. *Commonwealth v. Hicks*, 483 Pa. 305, 396 A.2d 1183 (1979); *Commonwealth v. Whitfield*, 475 Pa. 297, 380 A.2d 362 (1977); *Commonwealth v. Demmitt, supra.*

Affirmed.