399 A.2d 707

COMMONWEALTH of Pennsylvania

v.

Richard Charles HAEFNER, Appellant.

Superior Court of Pennsylvania.

Argued Dec. 6, 1977.

Decided March 9, 1979.

Richard A. Sprague, and with him, Pamela W. Higgins and Michael K. Simon, Philadelphia, for appellant.

D. Richard Eckman, District Attorney, and with him, John A. Kenneff, Assistant District Attorney, Lancaster, for Commonwealth, appellee.

Before WATKINS, President Judge, and JACOBS, HOFFMAN, CERCONE, PRICE, VAN der VOORT and SPAETH, JJ.

VAN der VOORT, Judge:

The appellant, Richard Charles Haefner, was charged with involuntary deviate sexual intercourse and corruption of the

morals of a minor. A jury trial commenced on January 27, 1976, in Lancaster County and on February 3, 1976, the presentation of evidence having concluded, the case was submitted to the jury. As more fully detailed below, the trial judge, on the latter date, *sua sponte* declared a mistrial, based upon the jury's failure to arrive at a verdict.

Thereafter, the appellant was scheduled to be tried again on the same charges. *Inter alia,* he filed a pretrial motion to quash indictments, based upon the argument that the trial court erred in its declaration of a mistrial, and that a second trial on the same charges would therefore be violative of his right to not be placed in double jeopardy. The lower court denied this motion and the appellant, on June 29, 1976, appealed that denial to our Court. The Commonwealth filed a motion to quash the appeal, contending that the order denying the appellant's motion to quash the indictments was interlocutory. This Court granted the Commonwealth's motion.

Appellant thereafter filed an appeal to the Pennsylvania Supreme Court. That Court, by a Per Curiam Opinion, on June 3, 1977, held that a denial of a pre-trial motion to quash an indictment, where the motion alleges that a second trial will violate a defendant's right not to be placed twice in jeopardy, is a final order, immediately subject to appellate review upon an appeal. *Commonwealth v. Haefner,* 473 Pa. 154, 373 A.2d 1094 (1977) (Former Chief Justice Jones not participating; Dissenting Opinion filed by Justice O'Brien, in which Justice Nix joined). Thus, the case was remanded to our Court for a determination of the appeal on the merits.

The record shows that appellant was tried before a Lancaster County jury from January 27, 1976 through February 3, 1976 on charges that he had engaged in indecent sexual contacts with a minor. Twenty-nine (29) witnesses testified during the course of the five days of trial. We need only highlight some of the most salient evidence and events of the trial for purposes of this Opinion.

The alleged victim was a twelve year old boy who claimed that the appellant, who employed him and other youths in a

small family business, had engaged in sexual contacts in a garage which was part of the business premises. The incident was not reported to anyone by the boy until a month and a half after it allegedly took place. The appellant, who completely denied the charge, was an educator of some standing who had no prior criminal record.

After the trial court charged the jury on the morning of February 3, 1976, it retired at 11:50 A.M., to begin deliberations. A luncheon recess in these deliberations was observed. At 5:10 P.M., the jury returned to the courtroom, whereupon the following colloquy evolved:

THE COURT: Mr. Foreman, has the jury reached a verdict?

BY THE FOREMAN: No, sir.

THE COURT: Well, members of the jury, as I stated and as you fully realize, this trial started last Tuesday, and I know you've been deliberating all afternoon, I know that the charge to the jury was completed about ten minutes of eleven. I understand that you returned from your lunch about 1:00, and have been deliberating since then. And under these circumstances, I'm going to direct that you return to the room for further deliberation, and I want to say to you that in order to return a verdict, each juror must agree thereto, that jurors have a duty to talk with another and to deliberate with a view to reaching an agreement, if it can be done without violence to individual judgments. Each juror must decide the case for himself, but only after an impartial consideration of the evidence with his fellow jurors. In the course of deliberations, a juror should not hesitate to re-examine his own views and change his opinion if convinced he should do this. No juror should surrender his honest conviction as to the weight or effect of the evidence solely because of the opinion of his fellow jurors or for the mere purpose of returning a verdict.

And, having stated that to you, members of the jury, I'm going to direct that you now return for further deliberation.

The jurors retired again at 5:10 P.M., to resume their deliberations. However, at 5:35 P.M., the jury returned to the courtroom, whereupon the record shows the following:

THE COURT: Mr. Foreman, the Court has been informed that the jury has a question, and the question is written out, is that correct?

BY THE FOREMAN: Yes, Your Honor.

THE COURT: Will you hand it to the Clerk, so he can hand it to me, please, Sir?

(Whereupon, the Court examines the question, at this point.)

THE COURT: Will counsel approach the bench?

(Whereupon, a discussion ensued off the record, at this point.)

THE COURT: A question which has been addressed to The Court is: Your Honor, we the jury would like to hear the testimony of Sergeant Crump and Sergeant Snyder pertaining to the events which took place in the police station when questioning the Defendant. Also, the cross examination of the prosecuting officers.

Members of the jury, the conduct of a trial requires that it is your recollection of the testimony which will be used in your deliberations. You have heard the testimony from the witness stand, you have heard the arguments of counsel, and you have heard The Court's instructions as to the law and the responsibility of the jury and so, it will be necessary for you in your continuing deliberations, to rely solely on your recollection of the testimony which was given.

Now, it's The Court's understanding, you are ready to go for dinner and it is twenty of six, so you will be taken by the Tipstaff for your dinner and then, you can deliberate further after dinner.

The jury then left the courtroom for supper and at 6:38 P.M., resumed deliberations. When they next returned to the courtroom it was 9:15 P.M., and the following colloquy took place:

THE COURT: Mr. Foreman, the jury has been deliberating since I imagine about 1:00, the charge was completed about a quarter of twelve, and I understand that you went to lunch and your returned about 1:00, and were here until about 6:30, and then I understand you came back between 7:30 and a quarter of eight. It's now after 9:15, which means that you have been deliberating about seven hours, and viewing your best recollection to the deliberations, the conversations, discussions, the vote that you had, and the discussion you're presently having, I want to ask you, Mr. Foreman, whether in your opinion, if there is further deliberation, it is your belief that this jury will be able to arrive at a verdict in these cases.

BY THE FOREMAN: Your Honor, I believe we may.

THE COURT: You believe you may?

BY THE FOREMAN: I believe we may.

THE COURT: You may reach a verdict and therefore, I direct that you return to your jury room to further deliberate. I wanted to inquire in view of the time that has transpired, so you go back to your room and deliberate further. Thank you.

The jury retired again at 9:20 P.M., to deliberate, but less than one hour later, at 10:15 P.M., the jurors again returned to the courtroom. The record sets forth further discussion:

THE COURT: Mr. Foreman, I have received a message which causes me to ask you whether it is your belief at this time, the jury will reach a verdict?

BY THE FOREMAN: No, Your Honor, I don't think we will ever reach a verdict.

THE COURT: You feel you've explored every possibility?

BY THE FOREMAN: Yes, Sir.

THE COURT: And you feel you've had sufficient time?

BY THE FOREMAN: Yes, Sir.

THE COURT: And you feel the jury will not be able to reach a verdict?

BY THE FOREMAN: I have been informed of that, yes, sir.

150

THE COURT: The Court then declares a mistrial of these two cases.

■■■ The sole issue for this Court's determination is whether the lower court erred in its declaration of a mistrial in all of the circumstances of this case. The basic constitutional precept which must guide us is the prohibition against double jeopardy set forth in the Fifth Amendment of the United States Constitution, which has been held applicable to state trials under the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969). There are no standardized guidelines nor any predetermined periods for juror deliberations prior to the time when a mistrial may be declared, so as to permit the retrial of a criminal defendant. *Commonwealth v. Monte*, 459 Pa. 495, 329 A.2d 836 (1974); *Commonwealth v. Coleman*, 235 Pa.Super. 379, 341 A.2d 528 (1975). The length of jury deliberations is left to the sound discretion of the trial judge (*Commonwealth v. Campbell*, 445 Pa. 488, 284 A.2d 798 (1971)), but any doubts concerning the existence of cause to support the declaration of a mistrial are to be resolved in favor of an accused defendant. *Commonwealth v. Howard and Banks*, 233 Pa.Super. 496, 335 A.2d 489 (1975). As to cause, really the crucial determination in any case such as this, it has long been established, that the jury should not be discharged in the absence of "manifest necessity" for the trial judge to do so. *United States v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed.2d 165 (1824); *Commonwealth ex rel. Walton v. Aytch*, 466 Pa. 172, 352 A.2d 4 (1976). If such manifest necessity does not exist, double jeopardy attaches and a retrial of the defendant is not permitted.

■■■ We have examined the record as a whole in the instant case and have some doubt as to the existence of a manifest necessity for the dismissal of the jury. In these circumstances, we must resolve this doubt in favor of the accused, and hold that a retrial of appellant is barred. Several factors coalesce in producing this conclusion.

The jury in this case was discharged, *sua sponte*, by the trial judge, at 10:15 P.M. The jurors had begun their

considerations just before noon the same day, after five days of trial, and after hearing the testimony of twenty-nine witnesses, arguments by counsel, and extensive instructions by the court. Their deliberations were abbreviated by luncheon and supper breaks, as well as by four separate return visits to the courtroom. On the first such visit, apparently at the request of the trial judge, the foreman, in response to the court's questioning, stated that no verdict had been reached. The judge gave the jurors a short additional instruction.[1] Only a few minutes later, the jury returned with a request that they be permitted to review the testimony on direct and cross-examination of two witnesses. The trial judge declined to permit such a review and released the jurors for supper. The judge recalled the jurors again at 9:15 P. M., to ask if it was believed that a verdict would be possible. The foreman immediately replied in the affirmative, and the judge released them for further deliberations. The fourth visit by the jury to the courtroom, since beginning deliberations at midday, was fifty-five minutes after it had been announced by the foreman that a verdict could be achieved. However, on this last occasion, the foreman for the first time stated a belief that no verdict could be reached. After asking the foreman a few short questions, the court declared the mistrial. In these circumstances, especially including the complex and conflicting testimony and other evidence to be considered, and the length of the often interrupted jury deliberations, we cannot find that a manifest or absolute[2] necessity existed, at the time for the discharge of the jury. In reaching this conclusion, we find the facts of this case closely analogous to those established in *Commonwealth v. Baker*, 413 Pa. 105, 196 A.2d 382 (1964), where the Supreme Court reached a similar conclusion. See also *United States ex rel. Webb v. Court of*

---

1. No issue is raised concerning the propriety of the additional instruction. *Commonwealth v. Spencer*, 442 Pa. 328, 275 A.2d 299 (1971).

2. Our Supreme Court has declared that a "manifest necessity" in these circumstances is the equivalent of an "absolute necessity." *Commonwealth v. Baker*, 413 Pa. 105, 196 A.2d 382 (1964).

*Common Pleas of Philadelphia County,* 516 F.2d 1034 (3rd Cir. 1975).

The dismissal of the jury in this case came less than one hour after the jury foreman expressed the feeling that a verdict could be reached. It also occurred at the first instance at which the court had any indication that the jurors were having difficulty in reaching an agreement. While it was not absolutely necessary to do so, the trial judge made no searching inquiry of each juror.[3] See *Commonwealth v. Bartolomocci,* 468 Pa. 338, 362 A.2d 234 (1976); *Commonwealth v. Coleman, supra; Commonwealth v. Howard and Banks, supra,* at footnote 5. Such a practice is preferred. Also, the trial court failed to solicit the views or consent of either the prosecution or the defense prior to the declaration of a mistrial, a procedure which is not mandated, but might have been helpful in resolving doubts about a discharge of the jury. See *Commonwealth v. Baker, supra.* Under all of these circumstances, and considering the record as a whole, we find an absence of the required absolute or manifest necessity for the discharge of the jury. A retrial, in these events, would violate the appellant's double jeopardy rights under the Fifth Amendment.

Appellant's motion to quash indictment is granted, and he is ordered discharged.

PRICE, J., files a dissenting opinion.

JACOBS and WATKINS, former President Judges, and HOFFMAN, J., did not participate in the consideration or decision of this case.

**3.** Such an inquiry would have been valuable here, where the jury foreman told the trial judge, when asked if he felt the jury would not be able to reach a verdict: "*I have been informed of that,* yes, sir." (Emphasis supplied). Such a response raises questions of whether the foreman's assessment of irreconcilable conflicts in juror's attitudes was shared by all of the jurors. See *United States ex rel. Webb v. Court of Common Pleas of Philadelphia County, supra,* at 1043–1044, on this issue.

PRICE, Judge, dissenting:

The pivotal question is whether the trial court properly exercised its discretion in finding manifest necessity to warrant declaring this mistrial. Since I believe that that discretion was properly exercised, I would affirm the denial of the motion to quash in the lower court.

I agree that doubt must be resolved in favor of appellant, however, I would not find a doubt under the circumstances here presented.

The trial judge did not assume a deadlock on the jury. The jury, through the foreman, stated the belief that the jury would never be able to reach a verdict. This was done in open court with all of the jurors present. The trial court had the benefit of the reactions of the jury. None of the jurors offered any contrary view when the foreman informed the court of the deadlock. *Commonwealth v. Bartolomucci*, 468 Pa. 338, 362 A.2d 234 (1976).

I find no requirement that each juror be questioned. Indeed, the court in *Bartolomucci, supra,* declined to express a view on such a procedure. And, in keeping with the discretion involved, I note the following excerpt from the trial judge's remarks at the time the mistrial was declared:

"This has been a difficult case from many angles and in many respects and obviously, you have served very conscientiously, you have given to it your best, and I thank you very much for what you have done.

Not every case is resolved by the jury, and you've not been able to resolve this one. *But it's written all over your faces that you've given it your real consideration, you've given it real effort, and I thank you and I congratulate you.*" (NT 616) (Emphasis added).

Such a clear indication that the trial judge read the reaction of the *jury* as agreement with the foreman's answers, as set forth in the majority opinion, leaves no doubt in my mind that the mistrial was properly declared.

Further, the record reveals *no* request by appellant to poll the jury, nor does it reveal an objection to the declaration of

a mistrial. Under *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974), errors not objected to at trial will not be reviewed on appeal. I believe appellant has waived his right to the relief the majority grants.

I would affirm the court below.