403 A.2d 591

**COMMONWEALTH of Pennsylvania**

v.

**Pete MEEKINS, Appellant.**

Superior Court of Pennsylvania.

Submitted Dec. 8, 1978.

Decided May 11, 1979.

Roy Davis, Assistant Public Defender, Media, for appellant.

David E. Fritchey, Assistant District Attorney, Chief, Law and Appeals Unit, Media, for Commonwealth, appellee.

Before CERCONE, President Judge, and HESTER and HOFFMAN, JJ.

HESTER, Judge:

██ Appellant Pete Meekins has twice stood trial in the Court of Common Pleas of Delaware County on charges of burglary, theft, and receiving stolen property. Both proceedings terminated prematurely in mistrials, once because the jury was deadlocked and once upon appellant's own motion. When the Commonwealth moved for trial still a third time, appellant filed a motion to dismiss the charges on the ground that another trial would violate his rights under the Double Jeopardy Clause of the U.S. Constitution. This motion was denied and an immediate appeal taken to this Court.[1] We affirm.

The charges grew out of an incident occurring on the evening of January 11, 1977 in Chester, Pennsylvania. At approximately 8:30 p. m. that night, the victim Melvin Wade walked into his home on West Seventh Street and saw in his kitchen an intruder carrying various items belonging to

---

1. Denial of a pre-trial motion to dismiss, where the motion alleges that a subsequent trial will place a defendant twice in jeopardy, is a final order and thus appealable prior to trial. *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); *Commonwealth v. Haefner*, 473 Pa. 154, 373 A.2d 1094 (1977); *Commonwealth v. Klinger*, 264 Pa.Super. 21, 398 A.2d 1036 (1979); Judicial Code, 42 Pa.C.S.A. § 742.

Wade. The intruder immediately took his leave out the back door, pursued closely by Wade. Outside, the burglar was joined by several confederates and the group, fleeing on foot down a back alley, was able to elude Wade. Appellant Pete Meekins was thereafter arrested and charged with the crime and was identified by Wade as the perpetrator.

As already stated, appellant's first trial, on June 23–24, 1977, ended when the court *sua sponte* declared a mistrial after ascertaining the jury was hopelessly deadlocked.[2] The second jury trial, held October 4, 1977, was aborted when the complainant Wade became extremely uncooperative on the witness stand and offered series of gratuitous remarks prejudicial to appellant's cause. Early in the trial, in an answer unresponsive to the assistant district attorney's question, Wade stated:

THE WITNESS:—I don't have—

THE COURT: Read the question back—

THE WITNESS:—the good sense to accuse this man as being the man that burglarized my home. Now, we've gone through this once, you have already cost me a lost of money. I would like for this case to be thrown out. It has cost me a hundred dollars in contempt,[3] it has cost me three hundred dollars thus far, and my time wasted for a thousand dollars. I no longer want to prosecute the man. Now, if I am in contempt, you will have to fine me again. But that's the case. N.T. 15.

Appellant's counsel moved for a mistrial, but then withdrew the motion.

Wade's recalcitrant demeanor continued unabated. Later, he volunteered:

THE WITNESS: Your Honor, I am saying this, as I mentioned to him, that there is no way I am going to get

**2.** The propriety of the court's declaration of a mistrial has never been challenged by appellant and hence the question of whether the second trial violated his double jeopardy rights is not before this Court.

**3.** Wade had earlier been fined for contempt for arriving late in court. N.T. 11.

fair justice, me being black, him being black, and all the jurors are white, they don't live in Chester! They don't know what the black problems are in the cities! That's your problem! And that's why they threw the last case out! Because we had an all white jury! And they don't know what what the—they don't know the good guys from the bad guys in Chester, and all we're doing is wasting time and you're fining me more money. I came in here to get a thousand, It's costing me a hundred plus three thousand. And we don't have the proper tools here to get a job done. You can't take a pickfork and do a job that you need a steamshovel to do. It's just that simple. Now, I've said what I had to say. N.T. 37–8.

Because of the reference to the prior trial, counsel again requested a mistrial. The court reserved a ruling. Later still, Wade stated, "If you live down there [apparently referring to Chester] you know who the thieves are." N.T. 41–2. Counsel renewed his motions for a mistrial, believing the statement prejudicial. The court again reserved a ruling, but when the Commonwealth rested, counsel's motion for a mistrial was granted. Appellant now contends that a third trial will violate his right not to be placed twice in jeopardy.

■ The Double Jeopardy Clause of the Fifth Amendment protects a defendant in a criminal proceeding against multiple punishments or successive prosecutions for the same offense. *Abney v. U. S.*, 431 U.S. 651, 97 S.Ct. 2034, 52 L.Ed.2d 651 (1977); *U. S. v. Dinitz*, 424 U.S. 600, 96 S.Ct. 1075, 47 L.Ed.2d 267 (1976); *Commonwealth v. Hogan*, 482 Pa. 333, 393 A.2d 1133 (1978).[4] At the core of this Constitutional safeguard is the belief that "the State with all its resources and powers should not be allowed to make repeated attempts to convict an individual for an alleged offense, thereby subjecting him to embarrassment, expense and ordeal and compelling him to live in a continuous state

4. The Double Jeopardy Clause is binding on the states through the Fourteenth Amendment. *Benton v. Maryland*, 395 U.S. 784, 89 S.Ct. 2056, 23 L.Ed.2d 707 (1969); *Commonwealth v. Grazier*, 481 Pa. 622, 393 A.2d 335 (1978).

of anxiety and insecurity, as well as enhancing the possibility that even though innocent he may be found guilty." *U. S. v. Scott*, 437 U.S. 82, 98 S.Ct. 2187, 2192, 57 L.Ed.2d 65 (1978); *Dinitz*, supra 424 U.S. at 606, 96 S.Ct. 1075; *Hogan*, supra 393 A.2d at 1134. Whenever a mistrial is declared, the defendant's "valued right to have his trial completed by a particular tribunal" is also implicated. *Wade v. Hunter*, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974 (1949). Cf. *U. S. v. Jorn*, 400 U.S. 470, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971).

■ The double jeopardy proscription does not mean, however, that every time a defendant is put to trial before a competent tribunal he is entitled to go free if the trial fails to end in a final judgment. *Illinois v. Sommerville*, 410 U.S. 458, 470, 93 S.Ct. 1066, 35 L.Ed.2d 425 (1973); *Commonwealth v. Stewart*, 456 Pa. 447, 317 A.2d 616 (1974). Thus, the trial court retains inherent power to discharge the jury before verdict whenever, in its opinion, taking all circumstances into consideration, there is a manifest necessity for the act, or the ends of public justice would otherwise be defeated. *U. S. v. Wilson*, 420 U.S. 332, 95 S.Ct. 1013, 43 L.Ed.2d 232 (1975); *Sommerville*, supra; *U. S. v. Perez*, 22 U.S. (9 Wheat.) 579, 6 L.Ed. 165 (1824); *Commonwealth v. Robson*, 461 Pa. 615, 337 A.2d 573 (1975); *Commonwealth v. Carson*, 259 Pa.Super. 183, 393 A.2d 778 (1978). This is true even if the mistrial is declared *sua sponte* over defendant's objection and hence a subsequent retrial for the same charges is not offensive to the Double Jeopardy Clause, so long as manifest necessity justified the termination of the initial proceeding. Compare, *Commonwealth v. White*, 476 Pa. 350, 382 A.2d 1205 (1978); *Commonwealth v. Brown*, 451 Pa. 395, 301 A.2d 876 (1973); *Commonwealth v. Hamilton*, 460 Pa. 686, 334 A.2d 588 (1975) with *Commonwealth v. Ferguson*, 446 Pa. 24, 285 A.2d 189 (1971); *Commonwealth v. Wideman*, 453 Pa. 119, 306 A.2d 894 (1971); *Commonwealth v. Haefner*, 264 Pa.Super. 144, 399 A.2d 707 (1979); cf. Crimes Code, 18 Pa.C.S.A. § 109(4); Anno. 77 A.L.R.3d 1143.

Quite different considerations must necessarily obtain when the mistrial has been granted at the defendant's

request. "Where circumstances develop not attributable to prosecutorial or judicial overreaching, a motion by the defendant for mistrial is ordinarily assumed to remove any barrier to reprosecution, even if the defendant's motion is necessitated by prosecutorial or judicial error." *U. S. v. Jorn*, supra, 400 U.S. at 485, 91 S.Ct. at 557; *Dinitz*, supra, 424 U.S. at 607, 96 S.Ct. 1075; *Commonwealth v. Bolden*, 472 Pa. 602, 373 A.2d 90 (1977); cf. *U. S. v. Tateo*, 377 U.S. 463, 467–8, 84 S.Ct. 1587, 12 L.Ed.2d 448 (1964). The rationale for the rule was well stated by the Supreme Court in *Dinitz* :

> [I]t is evident that when judicial or prosecutorial error seriously prejudices a defendant, he may have little interest in completing the trial and obtaining a verdict from the first jury. The defendant may reasonably conclude that a continuation of the tainted proceeding would result in a conviction followed by a lengthy appeal and, if a reversal is secured, by a second prosecution. . . .
> The important consideration, for purposes of the Double Jeopardy Clause, is that the defendant retain primary control over the course to be followed in the event of such error.

424 U.S. at 608, 609, 96 S.Ct. at 1080 (footnote omitted).

See also, *Lee v. U. S.*, 432 U.S. 23, 97 S.Ct. 2141, 53 L.Ed.2d 80 (1977).

Pennsylvania's decisions have consistently recognized that, ordinarily, a defendant who moves for, and is granted, a mistrial may be retried. *Commonwealth v. Wright*, 439 Pa. 198, 266 A.2d 651 (1970); *Commonwealth v. Myers*, 422 Pa. 180, 220 A.2d 859 (1966); *Commonwealth v. Rios*, 246 Pa.Super. 479, 371 A.2d 937 (1977); *Commonwealth v. Reeves*, 218 Pa.Super. 88, 272 A.2d 197 (1970); cf. *Commonwealth v. Manley*, 252 Pa.Super. 77, 380 A.2d 1290 (1977); *Commonwealth v. Hamilton*, 460 Pa. 686, 334 A.2d 588 (1975); *Commonwealth v. McGlory*, 226 Pa.Super. 493, fn 3, 313 A.2d 326, fn 3 (1973).[5] The only exception to this

5. "The special interest protected by the Double Jeopardy Clause is the defendant's interest in pursuing the first trial to completion when this course appears tactically advantageous, and this interest is

well-established rule is where judicial or prosecutorial action is intended to provoke mistrial requests and thereby subject the defendant to the substantial burden imposed by multiple prosecutions. The Double Jeopardy Clause will thus bar retrial where bad faith conduct by judge or prosecutor threatens to harass an accused and is designed to invite a mistrial so as to afford the prosecution a more favorable opportunity to convict. *Dinitz, supra* 424 U.S. at 611, 96 S.Ct. 1075; *Downum v. U. S.,* 372 U.S. 734, 83 S.Ct. 1033, 10 L.Ed.2d 100 (1963); *Myers, supra.* When such governmental overreaching is found to exist, the courts have not hesitated to forbid a retrial, notwithstanding the initial proceeding was aborted at the defendant's behest. See, e. g. *U. S. v. Martin,* 561 F.2d 135 (8 Cir., 1977); *U. S. v. Kessler,* 530 F.2d 1246 (5 Cir., 1976); *Commonwealth v. Warfield,* 424 Pa. 555, 227 A.2d 177 (1967).

█ In the instant case, there is no question that the mistrial was granted in response to two separate requests by appellant's counsel. Moreover, appellant concedes, as he must, that the conduct which precipitated the mistrial motions was not in any way the product of judicial or prosecutorial gross negligence or overreaching.[6] The taint infecting appellant's second trial flowed from a source wholly beyond

protected fully by honoring the defendant's preference for mistrial when a difficulty arises. Indeed, as the Court recognized in *Dinitz,* an approach barring retrial under these circumstances would require rejection of the defendant's mistrial motion and would force completion of the trial, which would be followed presumably by conviction, reversal based upon the initial trial error, and reprosecution as allowed by [*U. S. v. Ball,* 163 U.S. 662, 16 S.Ct. 1192, 41 L.Ed. 300 (1896)]. This process would impose upon the defendant precisely the burden and expense against which the Double Jeopardy Clause is supposed to provide protection. *Dinitz,* therefor, correctly suggested that the Double Jeopardy Clause does not guarantee the right to a trial untainted by the actions of the judge or the prosecution; rather, the clause protects only the defendant's right to participate in the decision whether to abort the trial once taint occurs." Schulhoffer, Jeopardy and Mistrials, 125 U.Pa.L.Rev. 449, 535 (1977).

6. See, *Commonwealth v. Potter,* 478 Pa. 251, 386 A.2d 918 (1978) (equally divided court) for discussion and authorities construing the various distinctions between governmental "gross negligence" and "overreaching" designed to provoke a mistrial.

the government's control. The prejudice inherent to appellant in Wade's recalcitrant and obstreperous behavior before the jury may well have convinced defense counsel that an impartial trial was no longer obtainable and that it would be in appellant's interest to end matters then and there. In such a situation, appellant "retain[ed] primary control over the course to be followed", *Dinitz*, and the Constitution raises no barrier to retrial.

Appellant lastly contends that a prejudicial statement by the trial judge was also a basis for the mistrial and that such statement constituted overreaching. However, the record is clear appellant has waived any objection to the alleged improper remark. During the course of the direct examination of Wade, the court stated to the assistant district attorney in the presence of the jury:

> THE COURT: Mr. Ryan, haven't you really proved your case? I mean by this witness? Do you really have to—
>
> MR. RYAN: Yes, sir, I believe I have to go further.
>
> THE COURT: He has shown how he knew him. Now, how far do you have to go? I mean you are just hurting—
>
> MR. RYAN: Your Honor—
>
> THE COURT: All right, go ahead. I am just trying to be helpful, that's all—
>
> N.T. 27.

At this point, counsel merely objected and cautionary instructions were given to the jury to disregard the remark. Later in the proceeding, counsel moved for a mistrial based on the statement, which motion was denied.

■■■ When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial. If he chooses the former, and does not object to the adequacy of the instructions, his rights are protected and a later claim for a mistrial is untimely. *Commonwealth v. Glenn*, 459 Pa. 545, 330 A.2d 535 (1974); *Commonwealth v. Sargent*, 253 Pa.Super. 566, 385 A.2d 484 (1978); *Commonwealth v. Blatstein*, 231 Pa.Super. 306, 332

A.2d 510 (1974); Pa.R.Crim.P. 1118(b). In the instant case, counsel seemed satisfied with the proferred instructions and then attempted to resurrect the error later in the proceedings. His untimely request for a mistrial was not properly before the court and hence was not a basis for the granting of the mistrial. See, *Commonwealth v. Riggins*, 478 Pa. 222, fn 3, 386 A.2d 520, fn 3 (1978); *Commonwealth v. Clair*, 458 Pa. 418, 326 A.2d 272 (1974).[7]

Even were we to find the claim properly preserved, we could hardly say these statements by the judge amounted to "bad-faith conduct" intended to goad appellant into a mistrial request. *Dinitz*, supra 424 at 611, 96 S.Ct. 1075. See, *Commonwealth v. Douglas*, 461 Pa. 749, 337 A.2d 860 (1975).

Accordingly, the order of the lower court refusing to dismiss the informations is hereby

Affirmed.

CERCONE, President Judge, concurs in the result.

---

**7.** Moreover, the court made it clear when it declared the mistrial that its decision was in response to appellant's motion "upon which I previously reserved ruling." N.T. 46. There is not even a suggestion that the mistrial was premised upon the judge's own remark, earlier objected to.