J-A12006-17

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| SHANE D. LAFFERTY | |
| Appellant | No. 573 WDA 2015 |

Appeal from the Judgment of Sentence Dated February 24, 2015
In the Court of Common Pleas of Allegheny County
Criminal Division at No(s): CP-02-CR-0004063-2014

BEFORE: OLSON, J., SOLANO, J., and RANSOM, J.

MEMORANDUM BY SOLANO, J.:                   **FILED SEPTEMBER 27, 2017**

Appellant, Shane D. Lafferty, appeals from the judgment of sentence imposed after he was convicted of two counts of child pornography.[1] We affirm.

An undercover investigation into the possession and distribution of child pornography by Pennsylvania State Police's Southwest Computer Crime Task Force led the police to obtain a warrant to search an address on Fallowfield Avenue in Pittsburgh. Police executed the warrant on October 29, 2013. When no one answered the door after they knocked loudly for over a minute, police kicked in the door. They found Appellant exiting an upstairs bedroom. Appellant's laptop computer was on the bed

---

[1] 18 Pa.C.S. § 6312(d).

with a file sharing program running. No other person was in the room at that time.

A forensic investigation of the laptop computer confirmed that it contained child pornography. As the trial court noted:

> Appellant conceded that his computer contained child pornography but alleged that others had access to the computer and may have downloaded child pornography without his consent or knowledge. The parties also stipulated that between April 5, 2013, and June 27, 2013, Appellant did not have access to his computer.

Trial Ct. Op. at 2. At the time Appellant's laptop was seized, he participated in a tape-recorded interview by the police in which he denied responsibility for the child pornography on the laptop. N.T., 2/17/15, at 154, 167-69.

Appellant was arrested in March 2014:

> Officer Dennis Baker of the City of Pittsburgh Police Department testified that on March 9, 2014 he was dispatched to a residence on Fallowfield Avenue to execute an arrest warrant for Appellant. Officer Baker knocked on the door and a man answered and identified himself as Brian Wells. The officer identified Appellant in court as the individual who said he was Brian Wells. "Brian Wells" told the officer that Appellant resided in the home but was not present at that time. Officer Baker asked Appellant to provide any identification, such as a driver's license or a piece of mail with his name on it, but Appellant could not produce these items. Appellant was asked his date of birth by three different officers and Appellant gave three different responses. Officer Baker arrested him, at which point Appellant said, "I'm Shane Lafferty. I'm the one you're looking for."

Trial Ct. Op. at 5 (citations omitted).

The trial court described Appellant's trial as follows:

> The Commonwealth presented evidence to explain to the jury the procedure the State Police used to determine the presence of

- 2 -

child pornography on the laptop computer owned by Appellant. Corporal [John] Roche testified that he created a PowerPoint presentation to explain his forensic examination of Appellant's computer. The PowerPoint was used as demonstrative evidence but was never offered or admitted into evidence.

Corporal Roche examined Appellant's computer and found approximately forty-three downloads with Appellant's name associated with it. Corporal Roche listed the downloads chronologically and testified that the activity of creating downloaded files ended on March 10, 2013 and resumed on June 29, 2013. The Corporal's search results also included a handful of downloads associated with either Wendy Cross or Amy Cross, other residents of Appellant's home. None of the downloads associated with Wendy or Amy Cross contained child pornography.

Corporal Roche gave as an example of the computer's activity the files indexed on Appellant's computer on July 9, 2013. Corporal Roche testified that on July 9, 2013, at 4:50 p.m., a text file was created on Appellant's computer called "Shane's food stamp app.number.text." File sharing of child pornography occurred on the same date at 4:37 p.m. and at 5:05 p.m. Corporal Roche concluded that the same person who created the document "Shane's food stamp app.number.text" was at the same time sharing child pornography through BitTorrent.[2] . . .

Appellant called several witnesses in an effort to cast blame on David Cross[, Amy Cross' brother,] for the child pornography on Appellant's computer. Thomas Betker testified that he lived at [Appellant's address] in the summer of 2013 with his girlfriend Jordan Thomas, Appellant, Amy Cross (Appellant's ex-girlfriend), and her mother Wendy Cross, and said that during that summer David Cross periodically resided there as well. Betker testified that he never saw Appellant access child pornography, that other individuals had access to Appellant's laptop computer during the relevant time frame, and that one of those individuals was David Cross. David would take the computer to a more private area of the home when he used it and at one point indicated a desire to destroy the computer. Jordan Thomas and a neighbor, Bridget

---

[2] "BitTorrent is a network that the State Police monitor for the distribution of child pornography." Trial Ct. Op. at 3.

Aber, testified similarly. In addition, Aber testified that David Cross confided to her that he had a sexual predilection toward children.

Amy Cross, David's sister, gave testimony that mirrored that of Betker, Thomas and Aber, but added that she had observed David Cross looking at child pornography when he was fourteen years old. Amy Cross testified that David Cross has prescription medication for a medical condition but he told her that he doesn't like to take it because it negatively affects his ability to control sexual urges he has towards children.

Nathaniel Wells, a high school friend of David Cross, testified that he observed David Cross looking at child pornography twelve years ago when Cross would have been seventeen years old. Wells further testified that he and Cross argued on Facebook over what Wells referred to as Cross' use of scripture to justify Cross' pedophilia.

David Cross testified on rebuttal under a grant of immunity. He denied using Appellant's computer to access child pornography. He denied having any conversation with Aber regarding an interest in having sex with young girls. He denied having been caught looking at child pornography by Wells twelve years ago. He stated that he was not at the Fallowfield address on the relevant dates and at the relevant times: July 3, 2013, at 6:00 a.m., on July 8, 2013 at 3:00 a.m., or on July 9, 2013 at 12:35 p.m. Further, he stated that he resided at the Fallowfield address in 2012 but had moved out by Christmas 2012 and was not residing there during the summer of 2013.

Amy Cross was called as a surrebuttal witness. She testified that David Cross once explained to her that a person interested in child pornography can use a "Pedobear" which is an otherwise innocuous image such as the cartoon pony from "My Little Pony" to express that person's pedophilic predilections.

Trial Ct. Op. at 4-7 (footnotes and citations omitted; some formatting altered).

One of the issues in this appeal concerns the following events that occurred during jury deliberations. In the course of the deliberations, the

jury twice asked to hear the tape of Appellant's interview by the police on the day the laptop was seized. That tape was played for the jury by one of the Commonwealth's witnesses, Corporal Gerhard Goodyear, a State Police officer who had testified during the trial as an expert on computer forensics and peer-to-peer file sharing investigations. *See* Trial Ct. Op. at 3-4, 7-8. The trial court recounted these events as follows:

> Corporal Goodyear entered the jury room on two separate occasions to play an audio file of the police interview with Appellant that was on the Commonwealth's laptop. Counsel was informed that Corporal Goodyear was going to play the audio for the jury but counsel mistakenly presumed a technician from the Office of the District Attorney, and not the Trooper who had testified, would be the individual who entered the jury room.[7]
>
> > [7] [The trial c]ourt's practice at the time was that, when evidence contained on a Commonwealth laptop was requested by a jury, with the consent of counsel a technician from the Office of the District Attorney would enter the jury room with the tipstaff to operate the laptop.
>
> After learning that the Trooper had entered the jury room to play the audio file requested by the jury, Appellant's counsel placed an objection o[n] the record. Counsel for Appellant was given an opportunity to develop a record by calling Corporal Goodyear and th[e trial c]ourt's tipstaff, George Nichols, to explain the circumstances of how a Commonwealth witness ended up in the jury room. Nichols testified that on the first occasion, Corporal Goodyear entered the jury room and played the audio file for the jury without Nichols in the room. The second time the jury asked to hear the interview, Nichols testified that the Corporal played the audio file for the jury in his presence. Nichols testified that he did not hear the jury ask the Trooper any questions.
>
> Corporal Goodyear testified that when he was in the jury room the first time to play the audio file, the jury asked if they could play the recording without the Corporal being present. He replied that either he or George had to be present because the

thumb drive that contained the interview also contained other items which were not introduced into evidence. The jury asked if they could have a transcript of the interview and the Corporal replied that no transcript was available. The Corporal testified that no other discussions occurred while he was in the jury room.

*Id.* at 11-12.

When it was revealed that Corporal Goodyear had spoken to the jurors, Appellant's counsel objected: "I object to that, Your Honor. He's a Commonwealth witness. All the communication with the jurors should be from the Court or George." N.T. at 539. Counsel continued that he was under the impression that the tape would be played by someone who was not a Commonwealth witness and then added: "I don't want a mistrial. I just don't want it to happen anymore." *Id.* at 542. The trial court then specifically directed Appellant's counsel "to determine whether or not he would request a mistrial." *Id.* at 544. After asking further questions of Corporal Goodyear and the tipstaff, Appellant's counsel stated, "[A]t this point I would like to state it was a good faith mistake. I think we all interpreted him saying he was going to run them up there as he was going to have them run up there or have the interview played." *Id.* at 547. Counsel asked for an opportunity to consult with his client and then reported: "Your Honor, I've spoke with Mr. Lafferty. We want to continue with the deliberations. We're not going to ask for a mistrial at this time." *Id.* at 548.

On February 20, 2015, the jury convicted Appellant.

At Appellant's sentencing hearing on February 24, 2015, the trial court stated: "I do not find anything in particular that would mitigate or anything necessarily that would aggravate the factors already taken into consideration in the guideline form. . . . I impose a standard range sentence[.]" N.T., 2/24/15, at 19-20. The trial court sentenced Appellant to two to four years of incarceration with six years consecutive probation.

On March 6, 2015, Appellant filed post-sentence motions, including a motion to reconsider his sentence and a "Motion for Judgment of Acquittal," requesting that "a new trial should be awarded in the interests of justice and because the jury verdict was against the weight of the evidence." Post-sentence Motions, 3/6/15, at 1-5. On March 10, 2015, the trial court denied the post-sentence motions.

On April 9, 2015, Appellant filed a timely notice of appeal to this Court.[3] In that appeal, Appellant raises the following issues, as stated in his brief:

I. When the Commonwealth's primary witness, Cpl. Goodyear, **twice** invaded the privacy of the jury room during deliberations, interacted with the jury, distributed evidence, and refused to leave when asked by the jurors, is a new trial warranted?

A. As [Appellant] was denied due process of law.

---

[3] The trial court observed: "A considerable delay ensued as the trial transcript was not filed in a timely manner. Appellant obtained the transcript on August 18, 2016 and filed a Concise Statement of Matters Complained of on Appeal on September 7, 2016." Trial Ct. Op. at 2.

B.     The trial court erred by failing to hold a hearing following the procedure in *Remmer v. U.S.*, 347 U.S. 227 (1954), "to determine the circumstances, the impact on the jury, and whether or not it was prejudicial, with all interested parties permitted to participate."

C.     The trial court erred when it did not give curative or cautionary instructions (if that was even possible).

II.     Was the evidence insufficient to sustain the verdicts when the primary Commonwealth witnesses testified that there was no evidence that [Appellant] used the lap top computer to share/download files of child pornography on the dates alleged in the criminal information and that they merely assumed he was home at that time?

III.     Was the verdict contrary to the weight of the evidence when viewed in its entirety since the evidence was so weak, tenuous and vague?

IV.     Did the sentencing court abuse its discretion by imposing a sentence that was inconsistent with the norms underlying the sentencing code and focused almost exclusively on the seriousness of the offenses to the exclusion of other pertinent factors?

Appellant's Brief at 6-7 (emphasis in original).

**Interference with Jury Deliberations**

Appellant first contends that, "when the Commonwealth's primary witness, Cpl. Goodyear, **twice** invaded the privacy of the jury room during deliberations, interacted with the jury, distributed evidence and refused to leave when asked by the jurors, a new trial is warranted."  Appellant's Brief at 23 (emphasis in original).  He continues that "[i]t is well established that insertion of outside influences into a jury's deliberative process is contrary to the foundations upon which our system of justice rests."  *Id.* at 31-32.

Appellant argues that the trial court should have held a hearing following the procedure in **Remmer v. United States**, 347 U.S. 227 (1954), which requires the trial court, upon learning of events that may have had an improper impact on a juror, to hold a hearing (at which all parties are permitted to participate) to determine the circumstances surrounding the incident, its effect on the juror(s), and whether or not it was prejudicial to the defendant. Appellant's Brief at 31. Without such a hearing, Appellant maintains that he "was denied due process of law." *Id.* at 23. He also insists that the trial court should have "give[n] curative or cautionary instructions . . . to remedy any prejudice that might [have] result[ed]." *Id.* at 41. Ultimately, Appellant contends that what happened in the jury room entitles him to a new trial.

In the first place, we observe that immediately after it learned that Corporal Goodyear had entered the jury room and spoken to the jurors, the trial court questioned both Corporal Goodyear and its tipstaff about what happened and then allowed Appellant's counsel to conduct further questioning. The court did not question the jurors, but Appellant made no request that the court do so. Rather, Appellant's counsel dismissed what happened as "a good faith mistake" and said that he "just [did]n't want it to happen anymore." N.T. at 542, 547. Appellant therefore has no basis to challenge the trial court's hearing as inadequate.

Nor does Appellant have a basis for a new trial or relief from his judgment of sentence. We have stated:

> "When an event prejudicial to a defendant occurs at trial, he may either object, requesting curative instructions, or move for a mistrial." **Commonwealth v. Meekins**, 266 Pa. Super. 157, 403 A.2d 591, 596 (1979). Pursuant to Pa.R.Crim.P. [605](b), in order for a motion for a mistrial to be timely, it must be made when the alleged prejudicial event occurs.

**Commonwealth v. Boring**, 684 A.2d 561, 568 (Pa. Super. 1996), **appeal denied**, 689 A.2d 230 (Pa. 1997).

This rule applies to unlawful intrusions into jury deliberations. For example, in **Commonwealth v. Cole**, 135 A.3d 191, 194 (Pa. Super.), **appeal denied**, 145 A.3d 162 (Pa. 2016), the trial court allowed an employee of the district attorney's office to access the jury room to play a surveillance video during deliberations. This Court held any challenge to this entry into the jury room by the district attorney's office employee to be waived "for failure to properly object during trial." **Id.** (citing **Commonwealth v. Baumhammers**, 960 A.2d 59, 84 (Pa. 2008) ("the absence of a specific contemporaneous objection renders the appellant's claim waived")).[4]

Here, the trial court invited Appellant to move for a mistrial after it learned what had happened. N.T. at 544. Appellant's counsel consulted with his client and then reported: "Your Honor, I've spoke with Mr. Lafferty.

---

[4] This Court nonetheless addressed the merits and held that the defendant was not entitled to relief. **Cole**, 135 A.3d at 194.

- 10 -

We want to continue with the deliberations. We're not going to ask for a mistrial at this time." *Id.* at 548. Appellant did not ask for a curative instruction or any other relief. It was not until after the jury rendered its verdict that Appellant switched positions on this issue. As the trial court correctly held, by then it was too late, as Appellant had already waived this issue. *See* Trial Ct. Op. at 12-13 (citing *Boring*, 684 A.2d at 568).

Although we strongly disapprove of the blatant impropriety of violating the sanctity of the jury room, we are constrained to agree with the trial court that this issue has been waived. Appellant's issues relating to this incident are therefore untimely and merit no relief.[5]

## Sufficiency of the Evidence

Appellant asserts:

The evidence was insufficient to sustain the verdicts when the primary Commonwealth witness, Cpl. Goodyear, testified that there was no evidence that [Appellant] used the lap top computer to share/download files of child pornography on the dates alleged in the criminal information and that he merely assumed the he was home at that time.

[Appellant] was convicted of two (2) counts of Possession of Child Pornography under 18 Pa.C.S.A. § 6312(d), Sexual Abuse of Children, Child Pornography. This section provides that "[a]ny person who intentionally views or knowingly possesses or

---

[5] Our holding of waiver does not foreclose Appellant's right to seek collateral relief for ineffective assistance of counsel. *See Commonwealth v. Grant*, 813 A.2d 726, 738 (Pa. 2002) (ineffective assistance of counsel claims are normally withheld until collateral review proceedings); *see also Commonwealth v. Burno*, 94 A.3d 956, 963 (Pa. 2014), *cert. denied*, 135 S. Ct. 1493 (2015).

- 11 -

controls any book, magazine, pamphlet, slide, photograph, film, videotape, computer depiction or other material depicting a child under the age of 18 years engaging in a prohibited sexual act or in the simulation of such act commits an offense." The Commonwealth must prove . . . the defendant must have knowingly possessed or controlled the depiction.

In the instant case, there is a lack of evidence establishing that [Appellant] knowingly possessed and controlled the child pornography on the laptop.

Appellant's Brief at 42-43 (formatting and citation omitted). Appellant claims that he lacked exclusive possession and control over the laptop.

On an evidentiary sufficiency claim —

Our standard of review for a sufficiency of the evidence challenge is well established:

A claim challenging the sufficiency of the evidence presents a question of law. We must determine whether the evidence is sufficient to prove every element of the crime beyond a reasonable doubt. We must view evidence in the light most favorable to the Commonwealth as the verdict winner, and accept as true all evidence and all reasonable inferences therefrom upon which, if believed, the fact finder properly could have based its verdict.

*Commonwealth v. McFadden*, 156 A.3d 299, 303 (Pa. Super. 2017) (citation omitted).

Viewing the record in a light most favorable to the Commonwealth, the trial court recited the evidence establishing that Appellant knowingly possessed and controlled the depictions on the computer:

[The] laptop was recovered from [Appellant]'s bed, with a file sharing program running on it at that time. Appellant admitted that the computer was his and that the images on his computer constituted child pornography. Corporal Roche's testimony established that child pornography was downloaded during a

- 12 -

time that someone with Appellant's first name created a document entitled "Shane's food stamp app.number.text." Furthermore, Corporal Roche's testimony established that no child pornography was downloaded for months while Appellant was out of the residence and unable to access the laptop, but upon his return into the home, child pornography was downloaded. When informed of his arrest warrant and given the opportunity to self-report, Appellant agreed to do so but did not. Subsequently, after police arrived at his residence to arrest him, Appellant[] lied to the police regarding his identity.

Trial Ct. Op. at 9. Notwithstanding his argument that he did not have exclusive possession and control over the laptop, Appellant's Brief at 42-43, Appellant admitted the computer was his. Trial Ct. Op. at 4 (citing N.T. at 161, 223), 9.

We agree with the trial court that this evidence was sufficient for the jury, as fact-finder, to find that Appellant knowingly possessed and controlled the computer and, hence, the child pornography saved on it. *See* 18 Pa.C.S. § 6312(d); *McFadden*, 156 A.3d at 303. Appellant does not challenge any other element of his child pornography convictions. We therefore hold that there was sufficient evidence for the jury to have properly rendered its verdict of guilty as to both counts of child pornography pursuant to 18 Pa.C.S. § 6312(d).

## Weight of the Evidence

Appellant also challenges the weight of the evidence, alleging:

In the present case, the verdict was against the weight of the evidence where: neither Cpl. Goodyear and Cpl. Roche were able to establish that [Appellant] was in fact the individual who was using the lap top on the date and times the child pornography was being downloaded or shared; the

- 13 -

Commonwealth's rebuttal witness, David Cross' testimony was wholly incredible and should have been given no weight since he testified under a grant of immunity and demonstrated an incentive to lie to deflect his own possible wrong doing, despite the fact that other witnesses testified that he also had access to the lap top in question; David Cross previously revealed that he had sexual urges towards pre-pubescent girls to defense witness Bridgett Aber and that she also testified that he had very peculiar habits when using a laptop computer, including needing an extraordinary amount of privacy when using it; and defense witness Nathaniel Wells testified that he personally saw David Cross viewing child pornography that was the same type that the Commonwealth claimed that [Appellant] possessed/shared, Mr. Wells also credibly testified that he argued with David Cross over Mr. Cross' posting of scripture that justified his attraction to child pornography. Hence, the verdicts rendered were contrary to the weight of the evidence presented as the Commonwealth's evidence was so weak, tenuous, and vague that no finding of guilt could have been reached.

Appellant's Brief at 45-46.[6]

We have held:

The weight of the evidence is exclusively for the finder of fact, who is free to believe all, none or some of the evidence and to determine the credibility of the witnesses.

Appellate review of a weight claim is a review of the exercise of discretion, not of the underlying question of whether the verdict is against the weight of the evidence. Because the trial judge has had the opportunity to hear and see the evidence presented, an appellate court will give the gravest consideration to the findings and reasons advanced by the trial judge when reviewing a trial court's determination that the verdict is against the weight of the evidence. One of the least assailable reasons for granting or denying a new trial is the lower court's conviction that the verdict was or was not against the weight of the evidence and that a new trial should be granted in the interest of justice.

---

[6] Pursuant to Pa.R.Crim.P. 607, Appellant's challenge to the weight of the evidence was preserved in his post-sentence motions, which included a motion for a new trial. Post-sentence Motions, 3/6/15, at 1-5.

In order for a defendant to prevail on a challenge to the weight of the evidence, the evidence must be so tenuous, vague and uncertain that the verdict shocks the conscience of the court.

***Commonwealth v. Talbert***, 129 A.3d 536, 545-46 (Pa. Super. 2015) (formatting, internal brackets, citations, and quotation marks omitted), ***appeal denied***, 138 A.3d 4 (Pa. 2016). "Resolving contradictory testimony and questions of credibility are matters for the factfinder." ***Commonwealth v. Hopkins***, 747 A.2d 910, 917 (Pa. Super. 2000).

After a thorough review of the record in this matter, we conclude that the trial court did not abuse its discretion in denying Appellant's motion for a new trial. We agree with the trial court that:

> Appellant's theory of the case was that David Cross or another individual used Appellant's computer to download child pornography. Based on the evidence presented at trial, the verdict does not so shock the conscience as to necessitate a new trial. The testimony, if believed, that David Cross viewed child pornography over ten years prior, held unconventional opinions regarding free love, and may have expressed a desire to destroy certain computers[5] pales in the face of the Commonwealth's evidence that the child pornography on Appellant's computer was downloaded coincident with Appellant's return to the home and not with a visit by Cross to the home. Furthermore, Appellant's name was associated with the downloads and no testimony placed Cross in the home at or immediately preceding the downloads. The jury could reasonably conclude that Appellant used his computer to download child pornography. As such, Appellant's claim is without merit.
>
> [5] Even if Cross used Appellant's computer at some point, that does not preclude the possibility that Appellant downloaded the child pornography in question.

Trial Ct. Op. at 10.

- 15 -

Appellant essentially asks us to reassess the credibility of the witnesses and to reweigh the testimony and evidence presented at trial. *See* Appellant's Brief at 45-47. We cannot and will not do so. The jury found credible Corporal Roche's testimony that someone with Appellant's first name created a document entitled "Shane's food stamp app.number.text," that no child pornography was downloaded for months while Appellant was out of the residence and unable to access the laptop, and that downloading of the pornography resumed after Appellant returned to his home. Thus, the trial court concluded that the verdict was not so contrary to the evidence as to shock the court's conscience and hence was not against the weight of the evidence. We discern no abuse of discretion in that ruling.

## Sentencing

Finally, Appellant challenges his sentence:

> [Appellant]'s sentence was manifestly excessive, unreasonable, and an abuse of discretion. It was not consistent with the norms underlying the sentencing code and failed to consider all relevant factors including the nature and characteristics of the defendant, and his rehabilitative needs. Instead, the [trial c]ourt focused exclusively on the seriousness of the offense to the exclusion of other pertinent factors.

Appellant's Brief at 47-48.

Before we reach the merits of Appellant's claim, we must decide whether to exercise our discretion to consider this appeal of the discretionary aspects of a sentence, which we will do only if: (1) the

appellant has filed a timely notice of appeal; (2) he has preserved the sentencing issue at the time of sentencing or in a motion to reconsider and modify his sentence; (3) he presents the issue in a properly framed statement in his brief under Rule 2119(f) of the Rules of Appellate Procedure, pursuant to ***Commonwealth v. Tuladziecki***, 522 A.2d 17 (Pa. 1987); and (4) in the words of Section 9781(b) of the Sentencing Code, 42 Pa.C.S. § 9781(b), "it appears that there is a substantial question that the sentence imposed is not appropriate under this chapter." ***See, e.g.***, ***Commonwealth v. Haynes***, 125 A.3d 800, 807 (Pa. Super. 2015), ***appeal denied***, 140 A.3d 12 (Pa. 2016); ***Commonwealth v. Zelinski***, 573 A.2d 569, 574-75 (Pa. Super.), ***appeal denied***, 593 A.2d 419 (Pa. 1990).

As noted above, on April 9, 2015, Appellant filed a timely notice of appeal to this Court. He also raised a challenge to the discretionary aspects of his sentence in his post-sentence motions and an Appellate Rule 1925(b) statement, and he has included a concise statement of the reasons relied upon for allowance of an appeal in his brief. ***See*** Appellant's Brief at 19-22. We therefore must determine whether his appeal presents a substantial question regarding his sentence. In that connection:

> A defendant presents a substantial question when he sets forth a plausible argument that the sentence violates a provision of the Sentencing Code or is contrary to the fundamental norms of the sentencing process. . . . The Sentencing Code prescribes individualized sentencing by requiring the sentencing court to consider the protection of the public, the gravity of the offense in relation to its impact on the victim and the community, and the rehabilitative needs of the defendant[.]

- 17 -

*Commonwealth v. Luketic*, 162 A.3d 1149, 1160-61 (Pa. Super. 2017) (brackets, quotation marks, footnote, and citations omitted).

Here, the trial court concluded that Appellant failed to raise a substantial question. *See* Trial Ct. Op. at 13; *Luketic*, 162 A.3d at 1160-61; *Haynes*, 125 A.3d at 807; *Zelinski*, 573 A.2d at 574-75. We disagree, as does the Commonwealth. Commonwealth's Brief at 40-41. In his Appellate Rule 1925(b) statement, at Paragraph G, Appellant claimed that his sentence "was not consistent with the norms underlying the sentencing code." *Cf. Luketic*, 162 A.3d at 1160-61. He also contends that his sentence "was manifestly excessive [and] unreasonable." *See* Post-sentence Motions, 3/6/15, at 4; Appellate Rule 1925(b) Statement ¶ G. "A claim that a sentence is manifestly excessive such that it constitutes too severe a punishment raises a substantial question." *Commonwealth v. Derry*, 150 A.3d 987, 995 (Pa. Super. 2016) (citation and quotation marks omitted). In addition, Appellant argues in his Rule 2119(f) statement that "[t]he sentence imposed . . . failed to consider all relevant factors including the nature and characteristics of the defendant, and his rehabilitative needs." Appellant's Brief at 20. An allegation that the sentencing court failed to consider an appellant's rehabilitative needs constitutes a substantial question, when presented in conjunction with other relevant factors. *See, e.g.*, *Luketic*, 162 A.3d at 1160-61; *Commonwealth v. Swope*, 123 A.3d 333, 340 (Pa. Super. 2015) (claim that failure to consider rehabilitative

- 18 -

needs and mitigating factors raised a substantial question); ***Commonwealth v. Dodge***, 77 A.3d 1263, 1273 (Pa. Super. 2013) (claim that sentencing court disregarded rehabilitation and the nature and circumstances of the offense raised a substantial question), ***appeal denied***, 91 A.3d 161 (Pa. 2014); ***Commonwealth v. Hill***, 66 A.3d 365 (Pa. Super. 2013) (claim that sentence was inconsistent with the protection of the public and with appellant's rehabilitative needs raised a substantial question). We therefore conclude that Appellant has raised a substantial question.

We apply the following standard of review:

Sentencing is a matter vested in the sound discretion of the sentencing judge, and a sentence will not be disturbed on appeal absent a manifest abuse of discretion. In order to establish that the sentencing court abused its discretion, the defendant must establish, by reference to the record, that the sentencing court ignored or misapplied the law, exercised its judgment for reasons of partiality, prejudice, bias or ill will, or arrived at a manifestly unreasonable decision.

***Luketic***, 162 A.3d at 1162-63 (brackets, quotation marks, and citations omitted).

The Sentencing Code, 42 Pa.C.S. § 9721(b), provides that a court should impose a sentence of confinement that is "consistent with the protection of the public, the gravity of the offense as it relates to the impact on the life of the victim and on the community, and the rehabilitative needs of the defendant." ***See Commonwealth. v. Walls***, 926 A.2d 957, 962 (Pa. 2007). During Appellant's sentencing hearing, the trial court asserted, "I do not find anything in particular that would mitigate or anything necessarily

- 19 -

that would aggravate the factors already taken into consideration in the guideline form. . . . I impose a standard range sentence[.]" N.T., 2/24/15, at 19-20. In its opinion, the trial court further explained that its sentence was based on the fact that:

> Although Appellant was charged with two counts of Possession of Child Pornography, the testimony elicited indicated hundreds, perhaps thousands of images of child pornography, representing a vast pool of child victims. Appellant's probationary status from 1994 to sentencing strongly suggests that Appellant is a poor candidate for community supervision. If anything, th[e trial c]ourt would have been justified in imposing a significantly longer sentence.

Trial Ct. Op. at 14.

Thus, the record indicates that the trial court considered the gravity of the offense, inasmuch as it considered that, even though the court could only sentence Appellant on two counts, he actually had possessed hundreds of images of child pornography. *See* 42 Pa.C.S. § 9721(b); *Walls*, 926 A.2d at 962; Trial Ct. Op. at 14. The trial court also reflected upon the impact on the victims, noting that "a vast pool of child victims" was involved. *See* 42 Pa.C.S. § 9721(b); *Walls*, 926 A.2d at 962; Trial Ct. Op. at 14. It further considered the impact upon the community, noting that "Appellant is a poor candidate for community supervision." *See* 42 Pa.C.S. § 9721(b); *Walls*, 926 A.2d at 962; Trial Ct. Op. at 14. It likewise considered Appellant's rehabilitative needs by noting that Appellant had been on probation for other offenses from 1994 until sentencing, indicating that previous attempts at rehabilitation had failed. *See* 42 Pa.C.S. § 9721(b); *Walls*, 926 A.2d at

962; Trial Ct. Op. at 14. Finally, because the trial court sentenced Appellant in the standard range, finding no aggravating factors, the sentence was not excessive and was consistent with the norms of the Sentencing Code. *Id.* We therefore discern no abuse of discretion or error of law in the sentence imposed by the trial court.

Judgment of sentence affirmed.

Judge Ransom joins the memorandum.

Judge Olson concurs in the result.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 9/27/2017